UNITED STATES of America, Plaintiff-Appellee,

v.

James Edward GIPSON, Defendant-Appellant.

No. 81–2238.

United States Court of Appeals, Tenth Circuit.

Nov. 15, 1982.

Certiorari Denied Feb. 22, 1983. See 103 S.Ct. 1218.

Leonard D. Munker, Wichita, Kan., for defendant-appellant.

Vernon E. Lewis, Asst. U.S. Atty. (Jim J. Marquez, U.S. Atty., with him on the brief), Kansas City, Kan., for plaintiff-appellee.

Before HOLLOWAY, McWILLIAMS and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

This is an appeal from a conviction for assault with a deadly weapon and bank robbery in violation of 18 U.S.C. §§ 2, 2113(d) (1976). Appellant Gipson, an indigent, argues that he was denied his Sixth Amendment right to counsel because the trial court refused to appoint counsel other than from the Federal Public Defender's offices in Kansas. Because Gipson did not wish to be so represented, he appeared at the trial below pro se, with an attorney from the public defender's office acting as standby counsel. Gipson also raises the issue of sufficiency of the evidence to support the jury's verdict. We affirm.

I.

Gipson was charged with robbing a bank in Kansas City, Kansas. At the time of his indictment, he was represented by Ira Kirkendoll, an attorney from the Federal Public Defender's office in Kansas City appointed under the Criminal Justice Act, 18 U.S.C. § 3006A (1976). On August 11, 1981, six days before trial, Gipson requested that Kirkendoll be dismissed, alleging a lack of communication between them. Gipson told the court that he wanted another attorney appointed because he did not wish to be tried pro se. The judge said that he would not go outside the public defender's office to provide Gipson with counsel, and gave Gipson the choice of going to trial pro se or having Kirkendoll as his attorney. Gipson repeated that he did not want Kirkendoll to represent him. The court then relieved Kirkendoll as counsel, and told Gipson to be ready for trial on August 17. Gipson was tried pro se on that date. The trial ended in a hung jury, and the case was set for retrial on October 5, 1981.

On August 28, the court held a hearing to determine whether Gipson wished to be represented by counsel at his retrial. Gipson said that he wanted an attorney. When the court advised him that it would appoint an attorney from the public defender's office, Gipson stated that he did not want that office to represent him. The court told him that it would not appoint an attorney outside the public defender's office but offered Gipson the choice of either the other attorney at the Kansas City public defender's office or one of the two attorneys at the public defender's office in Wichita, Kansas. Gipson then agreed to the appointment of a Federal Public Defender from Wichita.

A few days before the retrial, the trial judge received a letter from Gipson asking the court to dismiss his appointed attorney, Leonard Munker. Immediately prior to trial on October 5, Gipson renewed his request by oral motion. The court granted Gipson's motion, but denied his request that another attorney be appointed. The judge ordered Munker to act as advisory counsel to Gipson, and to alert the court to any action that should be taken during trial to protect Gipson's rights.

Gipson proceeded pro se at his retrial. Munker was present throughout the court proceedings. He responded to questions from Gipson during the trial and approached the bench on his own motion on several occasions, but he did not actively participate as Gipson's counsel. When Gipson was found guilty, the court appointed Munker to prepare and file post-trial motions and to be present at sentencing. Gipson subsequently was sentenced to fifteen years' imprisonment to be served after the state sentence he was then serving. Munker was appointed with Gipson's consent to represent him on appeal.

■ This court has articulated the basic principles applicable to these circumstances in *United States v. Weninger,* 624 F.2d 163 (10th Cir.), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980). Criminal defendants have a constitutional right to counsel in a criminal proceeding. However, the right to counsel does not imply an absolute right to the counsel of one's choice. *United States v. Peister,* 631 F.2d 658, 661 (10th Cir.1980), *cert. denied,* 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981); *Weninger,* 624 F.2d at 166; *United States v. Davis,* 604 F.2d 474, 478 (7th Cir. 1979); *United States v. Burton,* 584 F.2d 485, 489 (D.C.Cir.1978), *cert. denied,* 439

U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979).[1] The right to retain counsel of one's choice may not "be insisted upon in a manner that will obstruct an orderly procedure in courts of justice, and deprive such courts of the exercise of their inherent powers to control the same." *Burton,* 584 F.2d at 489 (quotation omitted); *see Weninger,* 624 F.2d at 166–67.

■ Defendants may waive their Sixth Amendment right to counsel and defend against a criminal charge pro se. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Weninger,* 624 F.2d at 164. However, a waiver must be knowing and intelligent to be constitutionally valid. As we said in *Weninger,* the trial judge has a duty to determine whether a proper waiver has been made, bearing in mind the strong presumption against waiver of this constitutional right.

" 'To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.' "

*Id.* (quoting *Von Moltke v. Gillies,* 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948)). The purpose of these requirements is to ensure that the defendant knows the possible consequences of waiving counsel.

The issue before us is whether Gipson effectively made a knowing and intelligent

---

1. Many of the cases examining the right to counsel and waiver issues do so in the context of the right to *retain* one's own counsel. In this case, we deal with those issues in the context of counsel appointed under the Criminal Justice Act, 18 U.S.C. § 3006A (1976). However, courts have found no distinction between appointed and retained counsel when considering the adequacy of representation, *see Cuyler v.*

*Sullivan,* 446 U.S. 335, 344–45 & n. 9, 100 S.Ct. 1708, 1716–17 & n. 9, 64 L.Ed.2d 333 (1980), or the preservation of the attorney-client relationship, *see Slappy v. Morris,* 649 F.2d 718, 721 (9th Cir.1981), *cert. granted,* —— U.S. ——, 102 S.Ct. 3480, 73 L.Ed.2d 1364 (1982). Consequently, cases involving retained counsel are relevant to our deliberations here.

waiver of his right to counsel.[2] Gipson never asserted at the October 5 hearing that he wished either to waive his right to counsel or to appear pro se. He did request that his appointed attorney, Leonard Munker, be dismissed that morning, immediately prior to trial, and he gave no reasons for seeking the dismissal. We note that on the eve of his first trial, Gipson requested that attorney Kirkendoll be dismissed, giving only an asserted lack of communication as grounds for his action. At that time, both the trial court and the Assistant United States Attorney found Gipson's allegations hard to believe, and their disbelief is supported by the record. Additionally, Gipson insisted throughout the proceedings below that he did not want any of the four available Federal Public Defenders to represent him, without giving any credible explanation for his objections. These actions suggest a pattern of delaying tactics by Gipson. He was offered three unbiased, competent lawyers to represent him. He refused to accept representation by any of them for no apparent reason, fully aware that his alternative was to represent himself.

█ The right to counsel "must be balanced against the need for efficient and effective administration of criminal justice." *Weninger*, 624 F.2d at 166; *see Burton*, 584 F.2d at 489. We will not allow a defendant to play a cat and mouse game with the court. Where the *Weninger* criteria are fully demonstrated in the record, such an unreasonable rejection of qualified counsel may well constitute a knowing and intelligent waiver of the right to assistance of counsel. *See Weninger*, 624 F.2d at 166–67.

█ Regrettably, the trial court did not raise at the pretrial hearings the factors that we stated in *Weninger* are crucial to a knowing, intelligent waiver of one's right to counsel. The court did not, so far as the record shows, inform Gipson of the nature of the charges against him, the statutory offenses included within them, or the range of allowable punishments to which he might be subjected. Nor did the court apprise

Gipson that possible defenses or mitigating factors might be available to him. To be sure, by the time of his retrial Gipson knew the requirements and mechanics of proceeding to trial pro se, as he had represented himself at his first trial. He also was undoubtedly aware at that time of the charges against him. Moreover, Gipson had been convicted of various felonies on four previous occasions and was serving a sentence of three to ten years in the Kansas State Penitentiary at the time of trial. Because of Gipson's extensive past experiences with the federal and state criminal justice systems, it may well be that he was aware he faced a possible prison term of twenty-five years and a possible fine of $10,000 under 18 U.S.C. § 2113(d). But none of these conjectures are confirmed by the record. All the record reveals is that Gipson repeatedly requested counsel, albeit counsel other than a Federal Public Defender, and that throughout the proceedings he maintained that he did not want to represent himself because he did not feel qualified to do so.

The trial judge must ensure that the defendant is aware of all of the factors we articulated in *Weninger* as essential to a determination that a waiver has been knowingly and intelligently made. 624 F.2d at 164. These factors must be conveyed to the defendant by the trial judge, and must appear in the record so that we may perform our review without having to speculate. In this case, the record reveals no "penetrating and comprehensive examination," *id.* (quoting *Von Moltke v. Gillies*, 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948)), by the trial court of Gipson's purported waiver. Consequently, it appears that the trial court failed to fulfill its duty under *Weninger*. However, because our examination of the record convinces us there is no reasonable possibility that Gipson would have been found not guilty had he been represented by counsel, *see* Part II. *infra*, we conclude that the error was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

---

**2.** This appeal results from Gipson's retrial. Consequently, whether he waived his right to counsel in the first trial is an issue that is not before us.

## II.

Gipson urges that the evidence is insufficient to support his conviction because the statements of the witnesses identifying him as one of the men involved in the bank robbery differed between his first trial and the retrial. We find this contention meritless. The record of the retrial contains testimony of three bank employees who were eyewitnesses to the robbery and who identified Gipson either in a photo line-up or at trial. Additionally, one of the participants in the robbery, Dave Covington, testified as a witness for the prosecution.

"Q: How long have you known Mr. Gipson?

"A: Approximately fifteen years.

" . . . .

"Q: Could you tell the members of the jury how you came to be in Mr. Gipson's company on [January 30, 1981]?

"A: We was involved in a bank robbery."

Rec., vol. III, at 4. The record abundantly supports Gipson's conviction.

AFFIRMED.