Andrew A. SANCHEZ,
Petitioner–Appellant,

v.

Eloy MONDRAGON, Warden, Southern N.M. Correction Facility; Attorney General of the State of New Mexico, Respondents–Appellees.

No. 86–2295.

United States Court of Appeals,
Tenth Circuit.

Oct. 6, 1988.

Tova Indritz, Federal Public Defender, Albuquerque, N.M., for petitioner-appellant.

M. Katherine Zinn, Asst. Atty. Gen. (Dale Morritz, Asst. Atty. Gen., on the brief), Santa Fe, N.M., for respondents-appellees.

Before SEYMOUR, McWILLIAMS and MOORE, Circuit Judges.

SEYMOUR, Circuit Judge.

Petitioner Andrew A. Sanchez appeals from the order of the United States District Court for the District of New Mexico denying with prejudice his petition for a writ of habeas corpus. The district court found that the state trial judge adequately advised Sanchez of his right to counsel and of the dangers of self-representation, thus rendering Sanchez's decision to represent himself voluntary, and knowing and intelligent. For the reasons set out below, we reverse.[1]

## I.

In June 1984, Sanchez was indicted on several counts related to a residential burglary and his subsequent apprehension by private citizens in the neighborhood. Sanchez was unhappy with his public defender's performance and sought either a new attorney or the opportunity to represent himself.[2] The court allowed Sanchez to serve as his own lawyer, although a public defender remained available to assist him.[3] Sanchez pled not guilty and proceeded to trial.

The Government presented evidence that a local resident saw three people coming out the back door of a neighborhood house. They looked around and started running. Two went in one direction and one headed the opposite way. The resident tried to follow the lone runner in his van, but the man began running between houses. The resident saw two friends on the street whom he told that a burglar would soon

---

1. At oral argument, it was disclosed that Sanchez has now completed his parole. We therefore questioned, sua sponte, whether the appeal had become moot. After supplemental briefing on the issue, we are convinced that the collateral consequences remaining from an unpardoned conviction are sufficient to preclude mootness. *Evitts v. Lucey,* 469 U.S. 387, 391 n. 4, 105 S.Ct. 830, 833 n. 4, 83 L.Ed.2d 821 (1985); *Sibron v. New York,* 392 U.S. 40, 55–57, 88 S.Ct. 1889, 1898–1899, 20 L.Ed.2d 917 (1968); *Walker v. McLain,* 768 F.2d 1181, 1183 (10th Cir.1985).

2. Two public defenders worked on Sanchez's case. The State contends that Sanchez was not satisfied with either one's performance. San-

chez argues that he never expressed any dissatisfaction over his first attorney, who stopped representing him for reasons unrelated to the substance of this case. The record is somewhat ambiguous on the point. We need not resolve this issue because it is immaterial to our resolution of the Sixth Amendment question presented.

3. We have held that the appointment of stand-by counsel in pro se cases is the preferred, although not mandatory, practice, *United States v. Padilla,* 819 F.2d 952, 959 (10th Cir.1987), provided such counsel abides by the requirements articulated in *McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984).

.

emerge from between houses. Moments later Sanchez came toward them and the two men wrestled him to the ground. Although Sanchez resisted, the two local men were able to restrain him until the police arrived. They removed a knife and screwdriver from his pockets and gave the items to the police. Sanchez testified that his car had broken down in the neighborhood and that he was running only because he believed the other men were chasing him. He testified that he used the screwdriver to work on his car. His sister confirmed that his car had broken down in the neighborhood. The court submitted four counts to the jury, battery, possession of a burglary tool, aggravated burglary, and larceny. The jury found Sanchez guilty on the battery and possession of a burglary tool counts but acquitted him of aggravated burglary and larceny. He appealed his conviction in state court and lost.

Sanchez then filed this petition for a writ of habeas corpus alleging that the trial court's inquiry into his decision to waive his right to counsel and to exercise his right to proceed pro se was inadequate, thereby violating his Sixth Amendment right to counsel. He also alleged that a jury instruction improperly created a presumption that one element of the crime had been fulfilled. A federal magistrate held that the state judge had fulfilled the constitutional requirements necessary to satisfy the Sixth Amendment when a defendant desires to represent himself, and that the challenged jury instruction was not error. The district court agreed. Because of our resolution of the Sixth Amendment issue, we need not reach the jury instruction claim.

## II.

■ After briefs were filed in this appeal, we decided *United States v. Padilla*, 819 F.2d 952 (10th Cir.1987), where we refined the appellate standard for reviewing a trial court's handling of a self-representation request under *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). At oral argument and in its supplementary brief on mootness, the State

suggested that because a habeas petitioner bears the burden of establishing a constitutional violation, the analysis we applied in *Padilla*, a direct appeal, may not be fully applicable here.

The State correctly contends that a habeas petitioner bears the burden of establishing by a preponderance of the evidence facts sufficient to show a constitutional violation. *See Johnson v. Zerbst*, 304 U.S. 458, 468–69, 58 S.Ct. 1019, 1024–25, 82 L.Ed. 1461 (1938). Under *Faretta*, a defendant intending to represent himself must be "made aware of the dangers and disadvantages of self-representation, so that *the record will establish* that 'he knows what he is doing and his choice is made with eyes open.'" 422 U.S. at 835, 95 S.Ct. at 2541 (emphasis added). *Padilla* merely discusses how the constitutional standard recognized in *Faretta* should be assessed. The petitioner's burden of proof in a collateral proceeding does not alter this applicable legal standard.

The State argues that in a collateral attack the petitioner must affirmatively prove that his waiver of counsel was not knowing and voluntary. *See Johnson*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; *Bortmess v. Rodriguez*, 375 F.2d 113 (10th Cir.1967). We interpret this as an argument that showing the record is inadequate under *Padilla* is not sufficient. The Supreme Court, however, has specifically held that in a Sixth Amendment waiver of counsel case on collateral review "it is incumbent upon the state to prove 'an intentional relinquishment or abandonment of a known right or privilege.'" *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977). In addition, the Court has considered the scope of a defendant's right to represent himself under *Faretta* in a collateral attack, suggesting that analysis of *Faretta* waiver-of-counsel claims on collateral review is identical to that appropriate on direct appeal. *See McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (establishing standard for determining when intervention of stand-by counsel violates right to self-representation). Finally, the Third Circuit has held that the same waiver standard applies

to *Faretta* issues on direct appeal and habeas corpus, *see Piankhy v. Cuyler*, 703 F.2d 728, 731 n. 3 (3d Cir.1983) (citing *Brewer*), and has analyzed such issues on collateral review in a fashion similar to that which we have applied to direct appeals. *See McMahon v. Fulcomer*, 821 F.2d 934 (3d Cir.1987).

■ The Third Circuit's approach is undoubtedly correct, because once the defendant establishes the record does not reflect that he was adequately informed of the hazards of self-representation, he has met his burden of showing a constitutional violation under *Faretta*. *United States v. Williamson*, 806 F.2d 216, 220 (10th Cir. 1986), is not to the contrary. In *Williamson*, a collateral challenge to a federal conviction, we recognized that "[w]here the record is silent, no presumption can arise that the accused waived his right to counsel.... However, in the instant case ... the record is [not] silent on whether the court explained [the defendant's] Sixth Amendment rights to him." 806 F.2d at 219–20. Relying on pre-*Brewer* case law, we carefully explained Williamson's argument to be that factors outside the state's control (e.g., his youth, pressure from parents and co-defendant, etc.) made his waiver of counsel involuntary. *Id.* at 219. *Faretta*'s requirement that there be a showing on the record that the defendant was "made aware of the dangers and disadvantages of self-representation" was satisfied. 422 U.S. at 835, 95 S.Ct. at 2541. Where the defendant is relying on matters outside the knowledge of the state to support his claim of involuntariness, it makes sense that he should bear the burden of proving "that his acquiescence was not made with sufficient understanding of his rights." *Williamson*, 806 F.2d at 220. Courts may not "devine a defendant's motivation for speaking or acting as he did even though there be no claim that governmental conduct coerced his decision." *Colorado v.*

*Connelly*, 479 U.S. 157, 107 S.Ct. 515, 521, 93 L.Ed.2d 473 (1986). However, where the record demonstrates that the defendant was not adequately informed of his rights under *Faretta*, *Brewer* requires the state to prove that the defendant voluntarily and intelligently waived his right to counsel.[4]

Finally, we have found no relevant authority suggesting that we should apply a different legal standard to properly preserved *Faretta* issues brought collaterally than we previously have applied to similar claims on direct appeal.[5] We therefore apply to this case the standards we developed in *Padilla* and our other prior *Faretta* cases.

### III.

■ In order for a defendant to invoke his *Faretta* right to represent himself, he must waive his Sixth Amendment right to counsel. "[T]he trial judge has a duty to determine whether a proper waiver has been made, bearing in mind the strong presumption against waiver of this constitutional right." *United States v. Gipson*, 693 F.2d 109, 111 (10th Cir.1982). In *Padilla*, we held that *Faretta* requires two separate examinations. First, we must determine whether the defendant voluntarily chose self-representation. The central question is whether the defendant knew of his right to *competent* counsel. A choice "between incompetent or unprepared counsel and appearing pro se" is "a dilemma of constitutional magnitude." *Padilla*, 819 F.2d at 955. The choice to proceed pro se cannot be voluntary in the constitutional sense when such a dilemma exists. Second, we must determine whether the defendant knowingly and intelligently waived his right to counsel. "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-represen-

---

4. A further indication that *Williamson*'s focus was distinct from the issues in this case is that *Williamson* does not cite *Brewer* or *United States v. Gipson*, 693 F.2d 109 (10th Cir.1982). These cases were controlling law for a *Faretta* claim such as Sanchez raises here.

5. Sanchez raised his *Faretta* claim on direct appeal, and the state appellate court denied it. Rec., vol. 1 exh. C., at 2–3.

tation," *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541 "the trial judge should conduct an inquiry sufficient to establish a defendant's knowledge and understanding of the factors" relevant to his decision to waive counsel. *Padilla*, 819 F.2d at 959.

■ We begin by addressing the voluntariness question. In order to determine that a defendant voluntarily chose to represent himself, the trial court must find that he does not have "good cause" warranting a substitution of counsel. "[T]he district court should make formal inquiry into the defendant's reasons for dissatisfaction with present counsel when substitution of counsel is requested"; however, formal inquiry is not essential "where the defendant otherwise stated his reasons for dissatisfaction" on the record. *Padilla*, 819 F.2d at 956 n. 1.

The State argues that Sanchez made clear his reasons for wanting to proceed pro se, and that no further inquiry by the court was necessary. In our view, the record reflects otherwise. In an ex parte conversation between Sanchez's attorney and the trial judge, counsel informed the court that Sanchez expressed some desire to have a private attorney or "something like that." Rec., Tape # 1 Chambers, 8/14/84. When Sanchez was brought before the court, he first asked if he could represent himself. Rec., Tape # 1 Court, 8/14/84. He immediately interjected, however, that the public defender had told him he could not get a different attorney, and he stated he was now asking the court if that was true. *Id.* The gravamen of Sanchez's request to represent himself was his belief that the public defender representing him was not sufficiently prepared; he felt that he could represent himself better than his appointed counsel because the lawyer did not know "what was going on in the case." *Id.* In support of his claim, Sanchez alleged that although he continually protested his innocence, his appointed counsel was interested only in discussing poten-

tial plea bargains. His attorney's conduct led Sanchez to believe that his counsel either did not have, or did not want to take, the time to prepare his defense.

Rather than ask Sanchez why he was unhappy with his counsel in order to ascertain if a problem existed or to assuage Sanchez's fears, the state trial judge merely reassured Sanchez that the public defender could not force him to plead guilty. The judge also told Sanchez that he knew his lawyer to be competent, and explained that an indigent defendant has the right to a free attorney, but not to select that attorney. The judge did not, however, inquire as to the extent of the lawyer's preparation for trial.[6] Thus, the court failed to ensure adequately that Sanchez was not exercising a choice "between incompetent or unprepared counsel and appearing pro se." *Padilla* 819 F.2d at 955.

In *Padilla*, the record reflected that the defendant sought new counsel because his attorneys would not structure his defense as he directed, and that the request for substitution was merely an attempt to delay the proceedings. 819 F.2d at 956. We held these reasons insufficient to support a claim of involuntariness under *Faretta*. The record in this case does not permit us to reach a similar conclusion. *Cf. McMahon*, 821 F.2d at 942–43. Sanchez's reasons for desiring substitute counsel may have been well grounded; we simply cannot tell.

This case is distinguishable from *Padilla* because counsel's decision there whether to pursue a certain line of defense is a question which calls for legal judgment. A layman cannot ordinarily assess the adequacy of such a decision. The issue here, however, is not legal strategy, but preparation. Sanchez knew as well as anyone how often and how extensively his lawyer had discussed his case with him. Given the well-known overworked state of many public defenders, it is possible that Sanchez's lawyer was insufficiently prepared, and

---

**6.** The only evidence on this point is the lawyer's statement that he "went to see [Sanchez] a couple of times in jail about the case and [Sanchez] talked about it a little bit." Rec., tape # 1 Chambers, 8/14/84. From this statement alone it is impossible to assess whether the lawyer was in fact sufficiently prepared.

that his attempts to persuade Sanchez to plead guilty were affected by his lack of preparation. In such a case, Sanchez would have good cause for his dissatisfaction and his waiver of counsel would not be voluntary. Because the record is virtually bare on this point, further inquiry by the trial judge was necessary.

■ Even if the record were sufficient to establish that Sanchez voluntarily chose to represent himself, we would have to reverse because his decision was not knowing and intelligent. The trial judge in this case did advise Sanchez against self-representation. He explained that defendants who choose that route usually lose. He even compared the situation to attempting to be one's own doctor. Such general warnings, however, are insufficient. The court must inform the defendant "of the nature of the charges, the statutory offenses included within them, [and] the range of allowable punishments thereunder." *Padilla,* 819 F.2d at 956 (quoting *Von Moltke v. Gillies,* 332 U.S. 708, 723, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948)). In addition, the court must discuss possible defenses or mitigating factors which might be available to the defendant, and it must inform him that he will be expected to follow the intricate rules of evidence and courtroom procedure just as a lawyer would. *Id.* at 957; *McMahon,* 821 F.2d at 945. "These factors must be conveyed to the defendant by the trial judge, and must appear in the record so that we may perform our review without having to speculate." *Gipson,* 693 F.2d at 112.

The State argues that we can infer from vague statements in the record that Sanchez did have the knowledge necessary to waive his right to counsel intelligently. In *Padilla,* however, we recognized that the defendant was experienced with the criminal justice system and was aware of most if not all of the information that the court was required to provide. Nevertheless, we held that because the relevant factors were not specifically reflected in the record, "the

trial court did not fulfill its obligation to ensure the defendant was" fully aware of all the requisite information. *Padilla,* 819 F.2d at 958–59; *cf. Gipson,* 693 F.2d at 112 (evidence of defendant's knowledge of relevant considerations must be in the record). Although "[n]o precise litany is prescribed ...[, t]he court should question the defendant as long and as thoroughly as the circumstances of the case demand.... Without such an inquiry on the record, a determination that the defendant made his choice 'with eyes open' cannot be made by a reviewing court without speculation." *Padilla,* 819 F.2d at 959.

Although the trial judge did more in this case than did the judge in *Padilla,* the inquiry was nonetheless insufficient. The district court "must bear in mind the strong presumption against waiver." *Id.* at 956. It " 'can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all circumstances under which' " the waiver was entered. *Id.* at 956–57 (quoting *Von Moltke,* 332 U.S. at 723–24, 68 S.Ct. at 323); *accord McMahon,* 821 F.2d at 945. The trial judge's general advice against self-representation and his failure to inquire into Sanchez's reasons for seeking substitute counsel constituted neither a penetrating nor comprehensive examination.[7]

### IV.

■ The State argues alternatively that we need not grant the writ because any constitutional error was harmless. In *Gipson,* we held that a similar Sixth Amendment violation did not mandate reversal under the standards articulated in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Subsequently, however, other circuits have questioned the applicability of harmless error analysis to waiver of counsel cases that result in the unconstitutional denial of counsel at a significant stage of the criminal process. *See*

---

7. We recognize that the state trial judge was considerate, compassionate, and caring throughout these proceedings. Admirable good faith efforts to be fair to the defendant, however, cannot undo constitutional violations.

*United States v. Balough*, 820 F.2d 1485, 1489–90 (9th Cir.1987); *United States v. Welty*, 674 F.2d 185, 194 n. 6 (3d Cir.1982). *But see Richardson v. Lucas*, 741 F.2d 753, 757 (5th Cir.1984) (applying harmless error analysis). The Ninth Circuit recently held that the Supreme Court's decision in *Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), prohibits the approach we took in *Gipson. See Balough*, 820 F.2d at 1490.

In a recent decision, the Supreme Court cast considerably more doubt on the applicability of harmless error analysis in *Faretta* waiver-of-counsel cases. In *Satterwhite v. Texas*, — U.S. ——, 108 S.Ct. 1792, 1798, 100 L.Ed.2d 284 (1988), the Court distinguished per se reversible Sixth Amendment error from that amenable to harmless error analysis by focusing on whether the error "affected—and contaminated—the entire criminal proceeding" or whether the error was "limited to the erroneous admission of particular evidence." The error here certainly was not limited to the erroneous introduction of evidence. Rather, it resulted in the defendant proceeding through the entire trial without counsel. *Cf. Holloway v. Arkansas*, 435 U.S. 475, 488–91, 98 S.Ct. 1173, 1180–82, 55 L.Ed.2d 426 (1978) (warning against use of harmless error analysis where the error affects what might have been done absent error rather than what was erroneously admitted).

Neither *Rose* nor *Satterwhite* amount to an explicit reversal of our prior holding. In *Rose*, the Court discussed the Sixth Amendment right to counsel only in a general discussion of *Chapman* and its progeny. *See Rose*, 106 S.Ct. at 3106 & n. 6. While *Satterwhite* did address Sixth Amendment error, it did not specifically refer to *Faretta* rights or waiver of counsel. Because we are reluctant to infer that the Supreme Court has implicitly overruled the decision of another panel of this court, we apply the *Chapman* harmless error test to the facts of this case.

"[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman*, 386 U.S. at 24, 87 S.Ct. at 828. After a full review of the record, we hold that this test cannot be satisfied. Sanchez was acquitted of both aggravated burglary and larceny, indicating that the jury had some doubts about his involvement in the crime. He was convicted only of possession of a burglary tool and of battery. The tool was a screwdriver that Sanchez alleged he was using to adjust his carburetor, and the battery was committed against private citizens who forcibly seized and detained Sanchez against his will on a public street. The evidence that Sanchez possessed the tool with the requisite intent was virtually nonexistent, and the jury was never instructed that Sanchez might have justifiably defended himself against the aggressions of strangers. In these circumstances, we maintain a reasonable doubt that had Sanchez been represented by a competent attorney, he would not have been found guilty. Hence, the error in this case was not harmless.

The judgment is reversed and remanded with instructions to grant the writ.

REVERSED.

McWILLIAMS, Circuit Judge, dissenting.

I agree with the district court that the state trial judge informed Sanchez of his Sixth Amendment right to counsel and of his reciprocal Sixth Amendment right to self representation and that, in connection with the latter, the state trial judge adequately advised Sanchez of the dangers inherent in self representation. I also agree with the further finding of the district court that Sanchez, having been advised of his Sixth Amendment rights and warned of the perils of self representation, voluntarily, knowingly, and intelligently elected to defend himself without counsel.

The majority's approach is to me supertechnical and will encourage defendants in criminal trials to play "cat and mouse" games with state trial courts. *See United States v. Padilla*, 819 F.2d 952, 959 (10th Cir.1987). On retrial of this case, should the State of New Mexico elect to retry

Sanchez, Sanchez, in view of the majority opinion, will in all probability be represented by appointed counsel, and, if convicted, will then no doubt contend in post-conviction proceedings in federal court that he was denied his Sixth Amendment right to self representation. *Ad infinitum!*