**Ahmad K. JAMES, Petitioner,**

**v.**

**Anthony BRIGANO, Respondent.**

**Case No. CR–3–00–491.**

United States District Court,
S.D. Ohio,
Western Division.

Feb. 19, 2002.

Derek Farmer, Cincinnati, OH, for Petitioner.

Stuart Harris, Columbus, OH, for Respondent.

**DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART PETITIONER'S OBJECTIONS (DOC. # 17) TO REPORT AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE (DOC. # 16); REPORT AND RECOMMENDATIONS ADOPTED IN PART AND REJECTED IN PART; MATTER REMANDED TO THE UNITED STATES MAGISTRATE JUDGE FOR FURTHER PROCEDURES**

RICE, Chief Judge.

Petitioner Ahmad K. James ("Petitioner") initiated this action under 28 U.S.C. § 2254, requesting a writ of habeas corpus, claiming that his conviction for numerous state offenses violated the Sixth and Fourteenth Amendments. The Court referred this matter to the United States Magistrate Judge, who issued a Report and Recommendations (Doc. # 16), recommending that this Court deny the requested relief. This case is now before the Court on the Petitioner's Objections to the Report and Recommendations of the Magistrate Judge. *See* Doc. # 17. The Respondent has not filed a memorandum in opposition to those Objections. For reasons which follow, the Court sustains in part and overrules in part the Petitioner's Objections. In addition, the Court adopts in part and rejects in part the Report and Recommendations and remands this matter to the Magistrate Judge for further proceedings, including an evidentiary hearing.

The Court begins its analysis by setting forth the standard it must apply when ruling upon the Petitioner's Objections. In *Flournoy v. Marshall,* 842 F.2d 875 (6th Cir.1988), the Sixth Circuit reiterated that a District Court must apply a *de novo* standard of review to the Report and Recommendations of a Magistrate Judge in a habeas corpus proceeding. Accordingly, this Court reviews both Judge Merz' factual findings and his legal conclusions *de novo.*

The Petitioner was charged in Clark County Common Pleas Court with violating the law of Ohio by having a weapon under a disability, possessing crack cocaine, possessing powder cocaine and carrying a concealed weapon. During his first trial on those charges, he was convicted of having a weapon under a disability, and the jury was not able to reach a verdict on the other charges. After the Petitioner had been sentenced for the offense for which he was convicted, the attorney who had been representing him was permitted to withdraw. An assistant Clark County Public Defender was then appointed to represent the Petitioner; however, he was also permitted to withdraw. Albert Stewart ("Stewart") was then appointed to represent the Petitioner. When the second trial commenced on June

22, 1998, Stewart immediately informed the trial court, during a bench conference prior to the empaneling of the jury, that he was not prepared to proceed, because the prosecution had not provided any discovery, despite the fact that he had requested same on the previous May 28th.[1] Transcript (Doc. #10) at 9. The prosecution agreed that Stewart had not been provided discovery; rather, it argued that the discovery packet had been provided to the attorneys who had previously represented the Petitioner and that Stewart had been given the transcript of the Petitioner's initial trial. *Id.* at 9–11. Stewart did not indicate whether he had read the transcript, nor did he respond to the prosecutor's argument concerning same. The trial court declined to continue the trial in order to permit Stewart to obtain and to review the discovery, concluding that the transcript from the first trial contained the testimony from every witness who would testify at the second trial. *Id.* at 13–14. The trial court indicated that the transcript provided more information than the discovery package which was normally given. *Id.*

The trial court then began voir dire. After it had examined the prospective jurors and while counsel were conducting their examination, the Petitioner stood up and indicated that he did want Stewart to be his lawyer and that he wanted to fire him. *Id.* at 39. The court sustained the prosecutor's objection to the Petitioner's comment and indicated that the matter would be discussed at a recess. *Id.* at 39–40. When voir dire resumed, the Petitioner engaged in another outburst in which he indicated that he did not have an attorney. *Id.* at 41. Counsel then conducted a sidebar conference with the trial court. During that conference, the prosecutor stated

that the Petitioner's half-brother and co-defendant had engaged in similar outbursts and had succeeded in obtaining a mistrial a few weeks earlier. *Id.* at 41–42. The prosecutor requested that the trial court exclude the petitioner from the trial proceedings, if any more outbursts were to occur. *Id.* at 42. Stewart moved for a mistrial, arguing that the Petitioner had already prejudiced the jury. *Id.* The trial court indicated that Stewart should inform his client that his outbursts were not helping his defense and that, if they were to continue, he might be held in contempt, removed from the trial or gagged. *Id.* at 43. The trial court also called a recess in order to give Stewart the opportunity to discuss matters with his client. *Id.* at 43–44.

Thereafter, the Petitioner appeared before the trial court, and was told that the outbursts would not help his defense and that Stewart was a competent, experienced trial lawyer. *Id.* at 45. The trial court also cautioned the Petitioner that further outbursts would lead to him being removed from the courtroom and tried in absentia or, alternatively, either being held in contempt or gagged. *Id.* at 46. The Petitioner indicated that he understood, but continued to express dissatisfaction with Stewart's representation and to indicate that he had issues with Stewart. *Id.* at 47. The trial court responded by indicating that Stewart was the third attorney who had been appointed to represent Petitioner and reiterating that Stewart was an experienced trial attorney. *Id.* The Petitioner asked whether he was being forced to go to trial, and the trial court suggested that the Petitioner could consult with Stewart. *Id.* at 48. The Petitioner indicated that he had nothing to say to Stewart. *Id.*

---

1. Since this conversation occurred at the bench, it is not certain that the Petitioner knew of Stewart's concern about his lack of preparation.

After that exchange, the Petitioner and Stewart had an opportunity to confer, after which Stewart requested that the trial court permit him to withdraw from his representation of the Petitioner. *Id.* at 49. According to Stewart, his continued representation would deny the Petitioner a fair trial. *Id.* Stewart did not explain this statement. The trial court refused to permit Stewart to withdraw, given that he was the third attorney to represent the Petitioner and the fact that the case was old. *Id.* at 49–50. The trial court once again warned the Petitioner that further outbursts would result in his being excluded from the trial, held in contempt or gagged. *Id.* at 50. After the Petitioner had consulted with Stewart, he told the trial court that he did not need an attorney. *Id.* at 51. In response to the trial court's question as to whether he wanted to represent himself, the Petitioner said:

If that's what it takes. I don't want—I don't—I lost my trust in people up here. I'm fighting for my life here. Don't nobody worry about that but me.

*Id.* at 51–52. The trial court indicated that it thought the Petitioner should have legal counsel and that it would be in his best interests to permit Stewart to represent him. *Id.* at 52. Petitioner said that he doubted that Stewart was working to preserve his (Petitioner's) best interests. *Id.* The trial court then indicated that jury selection should be completed with Stewart continuing to represent the Petitioner and that, after the jury had been selected, Stewart could remain seated in the courtroom so that he (Petitioner) could consult with him, if he wanted to represent himself. *Id.* at 52–53.

After the jury had been selected, the trial court raised the issue of self-repre-

sentation with the Petitioner. *Id.* at 91. It urged the Petitioner to continue to be represented by Stewart, while informing Petitioner that he had the right to represent himself. *Id.* at 91–92. The trial court also indicated that it would request that Stewart remain in the courtroom in order to be available to advise the Petitioner. *Id.* at 92. The Petitioner asked if he could use Stewart's copy of the transcript from the prior trial, since he had neglected to bring his copy with him. *Id.* The Petitioner also indicated that he had spent the previous year locked up reviewing the transcript. *Id.* After Stewart's copy of the transcript had been given to the Petitioner, the following colloquy occurred:

The Court: Now, do I understand that you want to represent yourself?

Defendant James: Yes.

The Court: And you understand that the Court is not asking you or advising you to do that. I'm strongly advising you to keep counsel with Mr. Stewart.

Defendant James: They stuck me with a lie. It's already on paper.

Female Voice: You still need an attorney. Excuse me, Your Honor.

The Court: Okay. I'll have Mr. Stewart stay in the courtroom if you want to go forward. Anything further, Mr. Stewart, at this time?

Mr. Stewart: I will stay here and assist Mr. James, Your Honor, and any legal technicalities he might have.

*Id.* at 92–93.

The Petitioner represented himself during the remainder of the trial and was convicted of all three offenses with which he was charged. Immediately after the trial, he was sentenced to 13 years incarceration.[2]

---

**2.** That period of incarceration was in addition to the sentence that was imposed on the Peti-

tioner as a result of having been convicted of

In this litigation, the Petitioner has set forth the following grounds for relief, to wit:

*Ground One:* Denial of Sixth Amendment right to effective assistance of counsel and Fourteenth Amendment right to due process, when trial court abused its discretion in failing to grant a continuance based upon trial counsel's statement that he was unprepared to proceed.

*Ground Two:* Denial of Sixth and Fourteenth Amendment right to effective assistance of counsel and due process of law, where trial court failed to inquire into complaints made by Petitioner during trial regarding effectiveness of assigned counsel.

*Ground Three:* Petitioner was forced to represent himself without knowingly, voluntarily or intelligently waiving his right to counsel in violation of the Sixth and Fourteenth Amendments and without a written waiver consistent with Rule 44 of the Ohio Rules of Criminal Procedure.

*See* Doc. # 1. As a means of analysis, the Court will discuss those three grounds for relief in the above order.[3]

*I. Ground One*

With his first ground for relief, the Petitioner focuses upon the refusal of the trial court to grant a continuance after Stewart had announced that he was not prepared for trial, due to the fact that the prosecution had not provided discovery. As is indicated above, the prosecution did not challenge Stewart's assertion that it had failed to provide the requested discovery. The Magistrate Judge recommended that the Court deny relief on this ground, because the Petitioner did not establish that the failure to provide discovery caused him to suffer prejudice. That judicial officer pointed out that Stewart had been given the transcript of the first trial and that the Petitioner did not argue that the prosecutor had presented any evidence which surprised him and was not included in the transcript from the first trial.

The Petitioner devotes a significant portion of his Objections to arguing that the Magistrate Judge improperly discounted the constitutional status of discovery. In that regard, the Petitioner is wrong. In *Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), the Supreme Court wrote that "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one. . . ." *Accord, United States v. Bencs,* 28 F.3d 555, 560 (6th Cir.1994), *cert. denied,* 513 U.S. 1117, 115 S.Ct. 915, 130 L.Ed.2d 796 (1995); *United States v. Mullins,* 22 F.3d 1365, 1371 (6th Cir.1994). Thus, the failure to provide the requested discovery cannot have been a violation of the Due Process Clause of the Fourteenth

having a weapon under a disability during his first trial.

**3.** The Petitioner has set forth ineffective assistance of appellate counsel as a fourth ground for relief. In particular, the Petitioner contends that his appellate counsel was ineffective because he failed to raise on direct appeal what are now the second and third grounds for relief in the Petition. It is apparent that the Petitioner has set forth this ground for relief in order to show cause and prejudice for his failure to raise those grounds for relief during his direct appeal. However, those grounds were included in the application to reopen his direct appeal. The Clark County Court of Appeals ruled upon the merits of those claims, rather than indicating that the Petitioner had waived them by failing to include them in his direct appeal. Consequently, there is no need for the Petitioner to show cause and prejudice in order for this Court to be permitted to address the merits of his second and third grounds for relief. Therefore, this Court overrules the Petitioner's fourth ground for relief as moot.

Amendment. Although this Court ultimately agrees with the Magistrate Judge that the Petitioner is not entitled to relief on Ground One, it respectfully disagrees with the reasoning of that judicial officer.

In *Dillon v. Duckworth,* 751 F.2d 895 (7th Cir.1984), *cert. denied,* 471 U.S. 1108, 105 S.Ct. 2344, 85 L.Ed.2d 859 (1985), the Seventh Circuit addressed an analogous situation. Therein, the petitioner had been charged in state court with, *inter alia,* two counts of felony murder, for which the prosecution was seeking the death penalty. Prior to his trial, his appointed counsel filed an affidavit, indicating that he was unprepared to defend his client due to a number of personal crises which had recently occurred in his life,[4] and requesting a continuance to prepare adequately. The trial court refused to continue the case, although it did delay opening statements a few days after the jury had been selected. After the petitioner had been convicted and had exhausted his state remedies, he sought habeas corpus relief in federal court. The District Court denied the requested relief. On appeal, the Seventh Circuit reversed, concluding that the trial court had improperly denied the request for a continuance, thus depriving the petitioner of effective assistance of counsel. In particular, the Seventh Circuit quoted *Morris v. Slappy,* 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983), to the effect that "only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the

assistance of counsel." *Id.* at 12–13 (quoting *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964)).[5] The Seventh Circuit concluded that the trial court had acted arbitrarily when it denied the request for a continuance and that its action constituted a deprivation of the petitioner's Sixth Amendment right to the assistance of counsel. The prejudice which the petitioner suffered as a result of his counsel's lack of preparation was evidenced by counsel's substandard performance both before and during trial. The Sixth Circuit has held that the denial of a requested continuance to permit counsel to prepare for trial can constitute a deprivation of the Sixth Amendment right to assistance of counsel and serve as the basis for granting habeas relief. *Linton v. Perini,* 656 F.2d 207 (6th Cir.1981), *cert. denied,* 454 U.S. 1162 (1982).

█ There are significant similarities between the instant case and *Dillon.* Herein, Stewart told the trial court that he was not prepared to proceed due to the prosecution's failure to provide discovery and he requested a continuance. Although the prosecution conceded that it had failed to provide the requested discovery, it argued that a continuance was not needed, because the discovery had been provided to petitioner's former counsel and Stewart had been given the transcript of the previous trial which contained all necessary information. Rather than determining whether Stewart had received the discovery through former counsel or whether he

---

**4.** The attorney had recently been divorced, ending his eleven-year marriage, and his father had undergone surgery.

**5.** In *Morris,* the Supreme Court had established the principle that scheduling problems faced by trial courts mandate that they be granted broad discretion on matters of continuances. The Supreme Court concluded therein that the trial court had not arbitrarily

denied the petitioner's request for a continuance, after the public defender representing him had to be replaced due to surgery. The Supreme Court noted that the replacement public defender had told the trial court that he was fully prepared and that a continuance was not necessary. In contrast, counsel in *Dillon,* as did Stewart in this case, requested a continuance because he was not prepared.

816

had read the transcript, the trial court concluded that Stewart did not need discovery, because the transcript provided him more information than that contained in the normal discovery package and that, therefore, a continuance was not necessary. The analogy between the instant case and *Dillon* fails when one comes to the question of prejudice. The Seventh Circuit concluded the petitioner had been prejudiced, as a result of his counsel's ineffective performance which flowed from the failure to grant the requested continuance. Herein, by contrast, the Petitioner represented himself during his trial. Given that Stewart did not ultimately represent the Petitioner during trial, there turned out to be no need for him to have reviewed the discovery materials in order to prepare. Consequently, since Stewart did not represent Petitioner at trial, he (Petitioner) was not prejudiced as a result of the trial court's failure to grant the continuance to permit Stewart to obtain and to review the discoverable materials. Since the Petitioner has failed to cite any authority which would permit this Court to conclude that he was denied his right to assistance of counsel or due process of law, as a result of the failure to grant the requested continuance, even though he was not prejudiced as a result, this Court will not grant the requested habeas relief.

Accordingly, the Court overrules the Petitioner's Objections to the Report and Recommendations of the Magistrate Judge (Doc. # 17), to the extent that, with those Objections, the Petitioner argues that he is entitled to relief on Ground One.

*II. Ground Two*

With the second ground for relief, the Petitioner alleges that he was denied his rights under the Sixth and Fourteenth Amendments, when the trial court failed to inquire into his complaints concerning the quality of Stewart's representation. The Magistrate Judge recommended that this Court deny relief on this ground, because the Constitution does not impose an absolute obligation on a trial court to inquire into every claim of dissatisfaction with counsel made by a criminal defendant. That judicial officer concluded that a trial court has a constitutional duty to inquire only when the criminal defendant's complaints have substance. The Magistrate Judge also indicated that the trial court had had a good reason to doubt the Petitioner's bona fides, since his half-brother and co-defendant had engaged in misconduct in his trial in order to gain a mistrial. The Magistrate Judge concluded that this ground for relief must be considered one for ineffective assistance of counsel, since there is no absolute right of inquiry, and that such a claim was without merit herein, because the Petitioner had failed to show that he suffered any prejudice as a result of the trial court's refusal to grant the requested continuance.

In his Objections, the Petitioner argues that the trial judge breached his duty to inquire into Stewart's effectiveness. In particular, the Petitioner relies upon *United States v. Calabro*, 467 F.2d 973 (2nd Cir.1972), *cert. denied*, 410 U.S. 926, 93 S.Ct. 1386, 35 L.Ed.2d 587 (1973), wherein the Second Circuit wrote:

In order to warrant a substitution of counsel during trial, the defendant must show good cause, such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict. *Brown v. Craven*, 424 F.2d 1166 (9th Cir.1970); *United States v. Grow*, 394 F.2d 182, 209 (4th Cir.), *cert. denied*, 393 U.S. 840, 89 S.Ct. 118, 21 L.Ed.2d 111 (1968); *United States v. Gutterman*, 147 F.2d 540 (2nd Cir.1945). If a court refuses to inquire into a seemingly substantial complaint about counsel when

he has no reason to suspect the bona fides of the defendant, or if on discovering justifiable dissatisfaction a court refuses to replace the attorney, the defendant may then properly claim denial of his Sixth Amendment right. *Brown v. Craven, supra.* In the absence of a conflict which presents such a Sixth Amendment problem, the trial court has discretion to decide whether to grant a continuance during the course of trial for the substitution of counsel, and that decision will be reversed only if the court has abused its discretion. *United States v. Main,* supra; *United States v. Grow, supra.*

*Id.* at 986. In *United States v. Iles,* 906 F.2d 1122 (6th Cir.1990), the Sixth Circuit wrote:

It is hornbook law that when an indigent defendant makes a timely and good faith motion requesting that appointed counsel be discharged and new counsel appointed, the trial court clearly has a responsibility to determine the reasons for defendant's dissatisfaction with his current counsel.

*Id.* at 1130 (internal quotation marks and citation omitted). The *Iles* court noted that the procedural protection afforded by requiring a trial court to make such a determination "not only aids in determining whether 'good cause' [to replace appointed counsel] has been shown, but serves to ease the defendant's distrust, to preserve the integrity of the trial process, and to foster confidence in the jury verdict." *Id.* at 1131. *See also, United States v. Graham,* 91 F.3d 213, 221 (D.C.Cir.1996) ("When an indigent defendant seeks appointment of substitute counsel pro se, however, the district court generally has an obligation to engage the defendant in a colloquy concerning the cause of the defendant's dissatisfaction with his representation."), *cert. denied,* 519 U.S. 1136, 117

S.Ct. 1003, 136 L.Ed.2d 882 (1997); *McMahon v. Fulcomer,* 821 F.2d 934, 942 (3rd Cir.1987) (reversing denial of habeas relief on ground that trial court did not inquire into reason for defendant's dissatisfaction with counsel).

■ Herein, before his trial had commenced, the Petitioner's appointed counsel announced to the trial court that he was unprepared to defend his client, because the prosecution had failed to provide the discovery to which his client was entitled. Rather than argue that it had provided same, the prosecution suggested that it was not necessary to have done so, since it had provided the discovery to the other lawyers who had represented the Petitioner and, further, given that Stewart had been given a transcript of the prior trial. The trial court did not ask Stewart whether he had obtained the discovery from the Petitioner's previous counsel or if he had read the transcript. The trial court assumed that there was no need for a continuance, because the transcript contained all of the evidence that the prosecution would produce and, thus, the Petitioner had been given more information than the discovery rules required. When the Petitioner made his outbursts during the voir dire, stating his dissatisfaction with his counsel, the trial court did not inquire into the reasons for that dissatisfaction. Rather, it told Stewart to tell Petitioner that any further outbursts would result in the Petitioner being removed from the courtroom and tried in absentia, being gagged or being found in contempt. Subsequently, the trial court repeated those warnings to the Petitioner on two occasions. In addition, when the Petitioner indicated that he wanted to represent himself, the trial court did not inquire into the reasons why he wanted to discharge his counsel and to represent himself. The trial court merely indicated that it wanted Stewart to finish the voir

dire and that the Petitioner would then be permitted to represent himself.

Under those circumstances, this Court is convinced that the failure of the trial court to ask Petitioner about his dissatisfaction with Stewart, an expression of dissatisfaction which followed shortly after Stewart had declared that he was not prepared to defend the Petitioner, violated the standards set forth by the Sixth Circuit in *Iles,* as well as in the other decisions discussed above. In other words, in view of the fact that the lawyer representing the Petitioner had indicated that he was not prepared, and, further, given the Petitioner's expression of dissatisfaction with his counsel, the trial court was obligated to inquire into that dissatisfaction. However, the failure of the trial court to conduct such an inquiry is not the basis for granting habeas relief in the absence of a showing of prejudice. That principle is demonstrated in the decision by the District of Columbia Court of Appeals in *Graham.* Therein, the defendant sent three letters to the District Court which contained vague allegations of dissatisfaction with his appointed counsel. 91 F.3d at 221. Although the District Court held a brief hearing on the matter, it did not give the defendant an opportunity to speak or ask him questions about his dissatisfaction with his counsel. *Id.* The District Court refused to appoint substitute counsel for the defendant. Although indicating that the District Court had erred in failing to engage the defendant in a discussion about his dissatisfaction, the Court of Appeals concluded that the defendant was not entitled to a new trial, since he had failed to demonstrate that he had suffered prejudice as a result of the refusal to appoint substitute counsel. The Court of Appeals reached that latter

conclusion on the basis of the defendant's failure to demonstrate that his appointed counsel rendered ineffective assistance. Herein, since the Petitioner represented himself during his trial, he cannot claim that he was prejudiced as a result of Stewart failing to provide effective assistance of counsel during the trial. Rather, the question of whether the Petitioner was prejudiced as a result of the trial court's failure to inquire into his dissatisfaction with Stewart depends upon the propriety of that court's decision to permit the Petitioner to represent himself. That is the subject of the Petitioner's third ground for relief, to which this Court presently turns. Thus, a ruling on Petitioner's Objections as they relate to Ground Two must await the Court's discussion of Ground Three.

## III. Ground Three

■ With this ground for relief, the Petitioner argues that he was forced to represent himself, without knowingly and intelligently waiving his right to counsel, in violation of the Sixth and Fourteenth Amendments.[6] The Magistrate Judge recommended that the Court deny relief on this ground. In particular, that judicial officer agreed with the analysis of the state appellate court to the effect that the Petitioner's true motivation for his complaints about Stewart was that he wanted Stewart to be discharged and another counsel to be appointed, thus providing an additional delay of his prosecution. The Magistrate Judge also concluded that the trial court had good reason to believe that the Petitioner had an ulterior motive for indicating that he was dissatisfied with Stewart, to wit: his desire to impede the proceedings. In his objections, the Peti-

---

**6.** The Petitioner also cites Rule 44 of the Ohio Rules of Criminal Procedure, which provides the manner in which a criminal defendant can waive his right to counsel. Since a viola-

tion of state law "is not cognizable on habeas review," *Buell v. Mitchell,* 274 F.3d 337, 350 n. 5 (6th Cir.2001), this Court need not discuss Rule 44 further.

tioner argues that he did not knowingly and intelligently waive his right to counsel when he represented himself during the trial.

In *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Supreme Court discussed the necessity that a criminal defendant knowingly and intelligently waive his right to counsel before he should be permitted to represent himself:

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. *Johnson v. Zerbst*, 304 U.S. [458, 464–65, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) ]. Cf. *Von Moltke v. Gillies*, 332 U.S. 708, 723–724, 68 S.Ct. 316, 92 L.Ed. 309 [ (1948) ] (plurality opinion of Black, J.). Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." *Adams v. United States ex rel. McCann*, 317 U.S. [269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942) ].

*Id.* at 835, 95 S.Ct. 2525. *See also, United States v. McDowell*, 814 F.2d 245 (6th Cir.), *cert. denied*, 484 U.S. 980, 108 S.Ct. 478, 98 L.Ed.2d 492 (1987). In *Sanchez v. Mondragon*, 858 F.2d 1462, 1467 (10th Cir. 1988), the Tenth Circuit reversed the denial of the petitioner's request for habeas relief. In particular, the *Sanchez* court concluded that the petitioner had not knowingly and voluntarily waived his right to counsel and elected to proceed pro se, because the trial court had failed to inquire into his complaint about his counsel's lack of preparation. Since the trial court did not ascertain the extent of the attorney's preparation for trial, it "failed to ensure adequately that Sanchez was not exercising a choice between incompetent or unprepared counsel and appearing pro se." *Id.* at 1466 (internal quotation marks and citation omitted).

■ Herein, the trial court refused to question the Petitioner about his dissatisfaction with Stewart. Therefore, a record which would support the reasoning of the Magistrate Judge and the state appellate court, to the effect that the Petitioner's true motivation for his complaints about Stewart was his desire to have him discharged so that another attorney could be appointed and the trial delayed, does not exist. That appears to be speculation, and it must viewed in the context that shortly before the Petitioner expressed his dissatisfaction with Stewart, that counsel had requested a continuance, because he was not prepared to go to trial. Since that conversation appears to have occurred outside the hearing of the Petitioner,[7] it is not possible to tell whether he was aware that his counsel was not prepared to defend him. Certainly, the reasoning of the Magistrate Judge and the state appellate court might be more persuasive, if the Petitioner were not aware of Stewart's opinion that he was not prepared to proceed. However, under the current state of the record, this Court cannot ascertain whether the Petitioner was "exercising a choice be-

---

7. Stewart requested and received permission to approach the bench with the prosecutor. While at the bench, Stewart requested the continuance and explained why it was necessary. There is no indication in the record that the Petitioner accompanied his lawyer to the bench.

tween . . . unprepared counsel and appearing pro se." *Sanchez,* 858 F.2d at 1466. Whether the Petitioner was merely attempting to delay his trial, as the Magistrate Judge and the state appellate court believe, or whether he was forced to choose between unprepared counsel and representing himself will only be able to be determined after an evidentiary hearing. *See Strozier v. Newsome,* 871 F.2d 995 (11th Cir.1989) (remanding habeas petition for evidentiary hearing in District Court, since record was unclear as to whether the petitioner had knowingly and voluntarily waived his right to counsel when he elected to represent himself). Of course, if the Petitioner were forced to choose between unprepared counsel and representing himself, it could not be said that he knowingly and intelligently waived his right to counsel. *Sanchez, supra.*

Accordingly, the Court sustains in part and overrules in part the Petitioner's Objections to the Report and Recommendations of the Magistrate Judge (Doc. # 17), as they relate to Grounds Two and Three. The Court sustains those Objections to the extent that the Petitioner argues that the Magistrate Judge erroneously recommended that relief should be denied on Grounds Two and Three and overrules them to the extent that the Petitioner contends that the Court should grant a writ of habeas corpus on those Grounds. Rather, in the absence of a fully developed record, the Court remands this matter to the Magistrate Judge for the purpose of a hearing to ascertain whether the Petitioner knowingly and intelligently waived his right to counsel when he elected to represent himself. Based upon the evidence adduced at that hearing, that judicial officer should issue another Report and Recommendations on that question. In addition, the Court overrules the Petitioner's Objections, as they relate to Grounds One and Four. The Court rejects the Report and Recommendations as it relates to Grounds Two and Three, and adopts that judicial filing as it relates to Ground One (albeit for different reasons) and Ground Four.