**Eddie James STROZIER,**
**Petitioner–Appellant,**

v.

**Lanson NEWSOME, Warden, Georgia**
**State Prison, Respondent–Appellee.**

**No. 90–8313.**

United States Court of Appeals,
Eleventh Circuit.

March 19, 1991.

Michael J. Bowers, Atty. Gen., Mary Beth Westmoreland, Susan V. Boleyn, Asst. Attys. Gen., Atlanta, Ga., for respondent-appellee.

Appeal from the United States District Court for the Northern District of Georgia.

Before KRAVITCH and ANDERSON, Circuit Judges, and ATKINS *, Senior District Judge.

KRAVITCH, Circuit Judge:

The sixth amendment guarantees not only a defendant's right to the assistance of counsel at a criminal trial, but also the right to waive counsel and personally present his or her own defense. The defendant faces serious risks by pursuing the latter course, and the Supreme Court has required that the decision to proceed pro se be made knowingly and intelligently. *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975).

> Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."

*Id.* (citation omitted).

In a federal habeas corpus petition, 28 U.S.C. § 2254, Eddie Strozier contends that his decision to waive counsel and represent himself at his criminal trial was not knowing and intelligent. The district court denied relief. On appeal, this court reversed and remanded for an evidentiary hearing on the waiver issue. *Strozier v. Newsome,* 871 F.2d 995 (11th Cir.1989) (*"Strozier I"*). At the evidentiary hearing before a magistrate, petitioner testified about the facts pertinent to waiver, as did Michael Whaley, the prosecutor at petitioner's 1983 criminal trial, and William Auld, one of the three

Glen Mason Darbyshire, Sutherland Asbill & Brennan, Atlanta, Ga., for petitioner-appellant.

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

lawyers who handled petitioner's case before trial. The magistrate found that petitioner had voluntarily relinquished his right to counsel before trial and recommended denial of habeas corpus relief. The district court adopted the report and recommendation denying relief, and petitioner again appeals.

## FACTUAL BACKGROUND

Petitioner had three successive lawyers before his trial: an appointed public defender, Auld, and T.V. Mullinax. Petitioner testified at the evidentiary hearing that he became dissatisfied with his latest counsel, Mullinax, on May 16, 1983, the day his criminal trial was scheduled to begin, because he felt Mullinax had not adequately prepared a defense to the charges against him of aggravated assault with intent to rape and kidnapping. Before voir dire, Mullinax informed the court that Strozier wished to represent himself.[1] The court responded:

> He's got a constitutional right to defend himself, but I'm not excusing you, Mr. Mullinax. I'll expect you to aid him and

---

1. There is no allegation that petitioner's request was untimely. *See Horton v. Dugger,* 895 F.2d 714, 717 (11th Cir.1990) (defendant's request to go pro se after jury selection untimely).

2. WHALEY: I have talked to Mr. Mullinax, though, in addition, about the other matters of similar transaction. If and when those people are available and located, I may or may not call them. So I want to make sure Mr. Strozier and Mr. Mullinax also are aware of the state's effort to introduce testimony as to similar transaction.
THE COURT: You're aware of that, Mr. Mullinax?
MULLINAX: Yes, sir, your honor, I'm quite aware of the fact.
THE COURT: Let the record so reflect. Mr. Mullinax, I would like the record to reflect— thank you, Mr. Strozier, you may sit down. I would like the record to reflect some of the scenario of counsel in this case so that there's not going to be any confusion as to who's got what information and where it reposes....
THE COURT: [N]ow I understand Mr. Strozier wants to represent himself; is that correct?
MULLINAX: That's what he so informed me, your honor.
THE COURT: Is that right, Mr. Strozier?
DEFENDANT: Yes.
THE COURT: I don't want any confusion with the record concerning information Mr. Strozier

assist him at any time there's any question raised. But the defendant himself, he must understand that the procedure is technical. We're going to abide by the rules as best we possibly can. His ignorance of the rules are not going to be any excuse. All right, sir.

Petitioner then began to conduct his defense. He asked questions and exercised peremptory strikes during jury selection. After jury selection but before opening statements, Strozier confirmed that he wanted to represent himself and the prosecutor stated that he had turned over the relevant pre-trial documents.[2] Strozier then acknowledged receiving only the indictment and the psychiatric report. After opening statements, the prosecution's evidence, and petitioner's witnesses, he expressed a desire to testify in his own defense.

> THE COURT: You understand you don't have to if you don't want to. That in the event you do you're subject to cross-examination like any other witness. Do you understand that?

---

says he doesn't have. And that's because—and that may come about as a result of the fact that he's had four lawyers, and information to his lawyer is information to him as I understand it.... It is to be understood information to the lawyer is information to his client. Do I understand, Mr. Whaley, that you have presented to either Mr. Strozier or one of his lawyers an indictment, a list of the witnesses you intend to have testify, the psychiatric report prepared and delivered to me and to you as well as to Mr. Auld? I see he got a copy of it as well, the notice that you intend to use similar transactions and what they are; is that correct?
WHALEY: Yes.
THE COURT: And these other two witnesses who you have just located, and you're advising him of today; is that correct?
WHALEY: Yes.
THE COURT: Any other information which is necessary to be given to the defendant before the jury is put on?
WHALEY: I also gave notice to both he and to present counsel, Mr. Mullinax, of his prior convictions to be used in aggravation of sentence.
THE COURT: And prior convictions in aggravation of sentence?
MULLINAX: I received that.
THE COURT: You got that. So he's gotten all that information either directly to him or to one of his lawyers.
Tr. 240–44.

DEFENDANT: Yes.

Mullinax conducted the direct questioning of Strozier, and on cross-examination the prosecution introduced prior convictions to impeach him.[3] Petitioner objected because he thought the prior convictions could not be used, but the court overruled the objection. After the state rested its case, petitioner attempted to raise the issue of waiver of counsel but did not submit evidence on it. Near the end of a conference on jury instructions, petitioner again questioned the validity of the waiver and, purporting to quote from *Jackson v. State*, 149 Ga. App. 496, 254 S.E.2d 739 (1979), he said that a defendant must be informed of the charges, defenses and possible sentences for a waiver to be knowing and intelligent.[4] The trial court then stated that petitioner had been apprised of his right to waive counsel because he knew of the offense charged "and of the general penalties involved." When the three-day trial was concluded, the jury found petitioner guilty of both charges.

3. Petitioner's prior convictions included a 1969 conviction for aggravated assault with intent to rape, a 1971 rape conviction and a 1982 weapons possession offense. Mag. report at 3.

4. DEFENDANT: When I first came up here Monday morning when the trial started and I asked to represent myself, you never read me my rights on representing myself, what my rights was.

THE COURT: What were your rights?

DEFENDANT: It says here Jackson versus State, 149 Georgia Appeals, a defendant has a federal constitutional right to waive his right of counsel and represent himself.... In a case in which a defendant says he wants to represent himself, a special burden rests upon the trial judge. He must be sure the record discloses that the defendant voluntarily, knowingly, and intelligently waives counsel and in the process he must be advised of his right to counsel and informed that if he cannot afford counsel, the judge will appoint counsel to represent him. There is a presumption that the defendant does not waive his right to counsel and the trial judge must determine whether or not there has been a valid waiver. It has been said that the trial judge must investigate as long and as thoroughly as the circumstances of the case before him demand. To be valid, a waiver of counsel must be made with an apprehension of: one, the nature of the charges; two, the statutory offenses included within them; three, the range of

Petitioner contends these exchanges before the trial judge do not establish a record of knowing and intelligent waiver of counsel because no warnings or questioning were directed to petitioner before the trial began. He argues that his three pretrial lawyers did not discuss the elements of the charges, defenses or evidence because they were only interested in fashioning a guilty plea. Judging from his performance as defense counsel, petitioner seriously misunderstood the charges.[5] He was not specifically warned even during the trial that prior convictions could be used for impeachment if he took the stand. Neither the trial court's warning that he would be cross-examined "like any other witness" nor the prosecution's declaration of intent to use similar transactions at trial or prior convictions in sentencing prepared the defendant for the prosecution's introduction of prior convictions. Petitioner contends that a more detailed and searching inquiry by the trial judge before trial was required to assure that the waiver met constitutional standards.

allowable punishments thereunder; four, possible defenses to the charges; and five, circumstances in mitigation thereof; and six, all other facts essential to a broad understanding of the whole matter.

THE COURT: You didn't have all that, did you?

DEFENDANT: You didn't tell me that.

THE COURT: I see. Thank you.

Tr. 477–78. The language does not come directly from the *Jackson* case, but from a "motion to dismiss" prepared by another inmate for petitioner before trial on May 5, 1983 that tracks a passage of *Von Moltke v. Gillies*, 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948) (plurality opinion). Tr. 133–136. At the end, the "motion" cites *Jackson* and *Faretta*. Petitioner claims he had not read it, but that the inmate who wrote it for him said it was designed to get the judge to explain his rights to him. R3–38, 47. He also testified that he did not give the motion to Mullinax, his lawyer as of May 5, but presented it to the court for the first time orally during trial. The "motion" was apparently filed with the court May 19, 1983, the day after the conviction, although there are some indications it was filed before trial. *See* Supplemental Brief for Petitioner, R2–Tab 50 at 18; R3–42, 47.

5. Petitioner misunderstood the elements of kidnapping to include a requirement that the accused had demanded payment of ransom. Petitioner brief at 13 n. 4.

Appellee responds that the above exchanges at the outset and during trial sufficiently warned petitioner of the hazards of representing himself. Furthermore, at the evidentiary hearing both Auld and Whaley testified that the trial judge, at a pre-trial appearance in open court on February 15, 1983, three months before trial, had cautioned petitioner against proceeding pro se after petitioner had expressed dissatisfaction with Auld's performance as his lawyer. Neither witness could recall specific questions posed, petitioner denies he was questioned on the waiver issue, and there is no surviving record of these proceedings.[6] Auld also testified that he had warned petitioner several times in private before trial that proceeding pro se would be dangerous because of his lack of legal training and the strength of the evidence against him.[7] The magistrate specifically found Auld and Whaley credible on this point, and petitioner not credible. The record does not disclose that at any time prior to trial petitioner was warned specifically that if he took the stand, prior convictions could be brought out for purposes of impeachment.

## WAIVER

■■■ Our assessment of whether the waiver of counsel was knowing and intelligent is a mixed question of law and fact that we review de novo. *Jackson v. James,* 839 F.2d 1513, 1516 (11th Cir.1988); *Fitzpatrick v. Wainwright,* 800 F.2d 1057, 1063 (11th Cir.), *reh'g denied,* 806 F.2d 1070 (1986). The burden of proof is on petitioner to show that the waiver did not meet constitutional standards. *Strozier I,* 871 F.2d at 998 n. 6 (quoting *Carnley v. Cochran,* 369 U.S. 506, 516–17, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962)); *Greene v. United States,* 880 F.2d 1299, 1303 n. 6 (11th Cir.1989) (on direct appeal the government must prove waiver, but in challenging an underlying conviction petitioner must prove he did not waive the right to counsel) (quoting *Strozier I,* 871 F.2d at 998 n. 6), *cert. denied,* —— U.S. ——, 110 S.Ct. 1322, 108 L.Ed.2d 498 (1990). *But see Jackson v. James,* 839 F.2d 1513, 1517 (11th Cir.1988) (state has not met its burden in habeas corpus of showing voluntary waiver) (quoting *Carnley* ).

■■■ The ideal method of assuring a voluntary waiver is for the trial judge to conduct a pre-trial hearing at which the defendant would be informed of the charges, basic trial procedures, and the hazards of self-representation. *See Strozier I,* 871 F.2d at 997 n. 4 (judge should do more than ask pro forma questions); *Sanchez v. Mondragon,* 858 F.2d 1462, 1467 (10th Cir.1988) (general questions insufficient, court must inform the defendant of the nature of the charges, included offenses, and the range of punishments); *Von Moltke v. Gillies,* 332 U.S. 708, 723, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948) (plurality opinion) ("a mere routine inquiry—the asking of several standard questions followed by the signing of a standard written waiver of counsel—may leave a judge entirely unaware of the facts essential to an informed decision that an accused has executed a valid waiver of his right to counsel"). The court should discuss with defendant possible defenses and trial procedures. *Sanchez,* 858 F.2d at 1467. *See also Stano v. Dugger,* 921 F.2d 1125, 1148 (11th Cir.1991) (en banc) (waiver must be knowing, intelligent and voluntary through specific questioning of the court, "a more extensive colloquy" than is required for submission of a guilty plea). This hearing should be on the record so that subsequent courts may review it without having to speculate. *Sanchez,* 858 F.2d at 1467; *Stano,* 921

---

**6.** Both Auld and Whaley testified that it would have been common practice to record such a proceeding. *See also* petitioner's "motion to dismiss" ("Petitioner states that he made it clear in this Hon. Court that he didn't trust his attorney and wanted to represent himself. The Hon. Judge Joel J. Fryer stated on record that petitioner have [*sic*] the right to represent himself."). Tr. 134. Appellees in the present appeal

s ate that their best efforts did not reveal any record of the hearing.

**7.** "And I urged him strongly, under no circumstances, to attempt to represent himself, considering the very serious nature of the charges against him and the tremendous sentences he was facing if he were convicted." R3–67.

F.2d at 1148 n. 36 (quoting *Fant,* 890 F.2d at 410). The closer such a waiver hearing is to trial, the more rigorous, searching, and formal the questioning of the trial judge should be. *See Patterson v. Illinois,* 487 U.S. 285, 298–99 & n. 13, 108 S.Ct. 2389, 2398 & n. 13, 101 L.Ed.2d 261 (1988).

■ Although we repeatedly have stated that such a procedure is preferred, we also have held that the failure to hold such a hearing is not itself constitutional error because "in rare cases the record may support a waiver." *Strozier I,* 871 F.2d at 997–98 (quoting *Fitzpatrick,* 800 F.2d at 1065–67). "The ultimate test is not the trial court's express advice, but rather the defendant's understanding." *Fitzpatrick,* 800 F.2d at 1065. As long as the record establishes that the defendant understood the risks of self-representation and freely chose to face them, the waiver may be valid.

Uncertainty on this point arises because of our recent statement that this circuit "makes mandatory the duty of a trial judge to hold a waiver hearing regarding the disadvantages of pro se defense." *Harding v. Davis,* 878 F.2d 1341, 1343 (11th Cir.1989) (citing *Fitzpatrick,* 800 F.2d at 1071 (Atkins, J., dissenting)). Every case in this circuit since *Harding,* however, has reaffirmed the *Fitzpatrick* majority position that a hearing is preferred, but not required. *See Greene,* 880 F.2d at 1303 (not essential, but "extremely beneficial"); *United States v. Fant,* 890 F.2d 408 (11th Cir.1989), *cert. denied,* ―― U.S. ――, 110 S.Ct. 1498, 108 L.Ed.2d 633 (1990); *Cross v. United States,* 893 F.2d 1287, 1290–91 (11th Cir.), *cert. denied,* ―― U.S. ――, 111 S.Ct. 138, 112 L.Ed.2d 105 (1990); *United States v. Scott,* 909 F.2d 488, 490 (11th Cir.1990) (waiver inquiry is trial court's "serious and weighty responsibility," determined by the facts and circumstances of the case, including the background, experience and conduct of the accused); *Stano,* 921 F.2d 1125, 1163, 1167 n. 12, 1179 (Tjoflat, C.J., dissenting). A pretrial hear-

ing would have clarified the waiver issue in this case, but because there was not one we must examine the entire trial record, including the evidentiary hearing held on remand, to assess whether the waiver was valid.

Here, as in *Fitzpatrick,* the defendant unequivocally stated his wish to proceed pro se. *See supra* n. 2. The question is whether he was aware of the risks of self-representation at the time he made that decision.

■ As summarized in the first appeal to this court, *Fitzpatrick* laid out eight factors for determining whether the record establishes a knowing and intelligent waiver: 1) defendant's age, educational background, and physical and mental health, 2) extent of defendant's contact with lawyers prior to trial, 3) defendant's knowledge of the nature of charges, possible defenses and penalties, 4) defendant's understanding of rules of procedure, evidence and courtroom decorum, 5) defendant's experience in criminal trials, 6) whether standby counsel was appointed, and the extent to which that counsel aided defendant, 7) mistreatment or coercion of defendant, and 8) whether defendant was trying to manipulate the events of the trial.[8] *Strozier I,* 871 F.2d at 998 (citing *Fitzpatrick,* 800 F.2d at 1065–67). In this circuit, not all the factors must point toward waiver. *Fitzpatrick* itself determined that waiver was knowing and intelligent because the defendant had an advanced education (# 1), pre-trial contact with lawyers (# 2), knowledge of the charges and procedure (# 3, # 4), and was trying to manipulate the proceedings (# 8), although he did not have prior criminal trial experience (# 5) or the aid of standby counsel (# 6). In *Fant,* we found a valid waiver based on factors two through six, although the trial court did not direct a single question at the defendant to determine the voluntariness of waiver. *Fant,* 890 F.2d at 410. In *Greene,* the trial judge did question the defendant, who had substantial experience with the criminal sys-

---

**8.** A corollary of the manipulation factor is that a persistently uncooperative defendant could functionally waive the right to counsel even

without an examination by the trial court. *See Harding,* 878 F.2d at 1344 n. 2.

tem, but this court nevertheless found no knowing and intelligent waiver because of failure to inquire about defendant's background or level of legal expertise. *Greene*, 880 F.2d at 1304.

Although *Strozier I* noted that the record to some extent supported waiver based on the enumerated factors, it remanded for an evidentiary hearing for the express purpose of answering the "hard factual questions presented by this appeal." *Id.* at 998 n. 7.

■ On remand, the district court concluded that several factors supported waiver. First, it found that petitioner had a fifth grade education at the time of trial and had no health problems. It stated that his prior convictions, particularly the three-day rape trial, gave petitioner "an extensive background in the criminal court system." Petitioner responds that all previous offenses but one were finalized through a plea, and at the one trial he took the stand but gave an unsworn statement and was not cross-examined. Addressing the second factor, the district court noted that petitioner had contact with three lawyers before trial: a public defender, Auld, and Mullinax. At the evidentiary hearing Auld stated that he had discussed the case with petitioner and advised him against proceeding pro se.[9] Third, the trial court found that Auld had informed petitioner of the charges, although the record of his own defense indicates that petitioner misunderstood the charges and the penalty. Addressing the fourth and fifth factors together, the district court acknowledged that petitioner "did have limited knowledge" of courtroom procedure and was aided by standby counsel and the warnings of the judge as the trial proceeded. Petitioner stresses that his understanding of procedure was inadequate, and that any aid from the court or standby counsel came only after he had already waived his right to counsel. Sixth, the district court stated "the court cannot find that [standby] counsel [Mullinax] was of continuing aid to the

petitioner at the trial," but noted that Mullinax did question petitioner on the stand, objected to evidence and explained closing arguments to him. Petitioner claims that standby counsel did more harm than good by conducting the questioning without preparation, possibly mispronouncing Strozier's name, and admitting before the jury that he had not heard of defendant's defense that the victim's family felt animosity toward him before the acts charged because of previous contact. Seventh, the court found the testimony of Auld and Whaley, as well as the defendant's possession of the "motion to dismiss," *supra* n. 4, indicated that petitioner simply wished to represent himself and was not coerced. Eighth, the court found evidence of manipulation inconclusive. In summary, the court relied upon the first six *Fitzpatrick* factors to show waiver, although all six were disputed by the parties. Neither coercion nor manipulation was definitively established.

The evidence of waiver in the trial record is relatively scarce. On the first day of trial, the court did not address petitioner directly, but merely warned his outgoing counsel to remain as standby counsel because "the procedure is technical." There was no discussion with the judge of the charges, defenses, or procedures. Any subsequent warnings or assistance at trial were too late to affect petitioner's initial decision to waive counsel. The warnings during trial were vague and haphazard, and, not surprisingly, petitioner's performance as counsel was inadequate. Petitioner testified that his possession of the "motion" prepared by a fellow inmate but not yet filed with the court was merely a guideline he wished the judge to follow rather than an indication that he understood its contents. Near the end of the trial, when petitioner finally did object that he had not understood the consequences of his waiver of counsel, the trial court merely asserted that his choice had been voluntary.[10] The

---

9. Mullinax died in 1985.

10. Let me say this to you. First, it is my belief and understanding you were adequately ap-

prised of your rights, constitutional guarantee to represent yourself. It is my belief that you knew that, of the offense with which you were charged, and of the general penalties in-

judge referred to no previous proceeding at which the issue of waiver had been settled by exhaustive inquiry, as is confirmed by his response: "You didn't have all that, did you?" *See supra* n. 4. Indeed, the decision to dismiss Mullinax and go pro se was made on the morning the trial commenced and could not have been finalized earlier.

Thus, the trial record is still unclear, even after an evidentiary hearing, and the primary support for knowledge of the risk of waiver is the testimony of Auld and Whaley that the trial judge cautioned petitioner in a pre-trial appearance against proceeding pro se. According to Whaley, this occurred February 15, 1983, three months before trial, when petitioner was still represented by Auld. There is no transcript of this proceeding, and there is no indication that Whaley's notes about it mention anything about an examination by the judge on the issue of waiver of counsel.[11] Whaley testified that the court appearance was designed to air problems petitioner was having with Auld's performance as a lawyer. After petitioner had expressed interest in representing himself, Whaley testified that the judge examined him:

> Well basically at that juncture what Judge Fryer did was to illicit [elicit] some further information from Mr. Strozier. He pointed out to him that he did, in fact, have that right to represent himself, but at the same time he cautioned Mr. Strozier against that course of action. And examined him, I guess, in terms of whether or not Mr. Strozier understood all the ramifications of representing himself and whether or not he had the expertise necessary to do that sort of thing.

Auld also testified at the evidentiary hearing that at a pre-trial appearance, the judge

questioned petitioner about self-representation:

> Specifically I could not tell you precisely what the judge said. I do have a very clear recollection of Judge Fryer admonishing him [Strozier] at some length against trying to represent himself and discussing with him the reasons why this was not a wise thing for him to do.

According to Whaley, the judge then consented to allow petitioner to represent himself and appointed a public defender to assist him. Several months later, about two weeks before trial, petitioner apparently changed his mind and hired Mullinax.

The district court specifically chose to credit the testimony of Auld and Whaley, rather than the denial of Strozier that he was ever fully informed of the risks of self-representation. None of the three who testified are impartial witnesses. Auld had strong disagreements with Strozier about the trial defense back in 1983 and Strozier eventually fired him. Whaley, in private practice at the time of the evidentiary hearing, was the prosecutor in the case and he testified that he had never had a jury verdict reversed during his ten years as a state prosecutor. Strozier, of course, is seeking to overturn a conviction and jail sentence. The testimony was about a single, unrecorded pre-trial proceeding in 1983 that concerned the performance of a lawyer (Auld) different from the one Strozier subsequently hired and then sought to dismiss (Mullinax) three months later. However, the magistrate who held the evidentiary hearing was in the best position to evaluate the credibility of the witnesses. Auld testified that he had discussed the charges, evidence and sentence with petitioner and that Judge Fryer had cautioned him against representing himself and apprised him of some basic trial procedures.[12]

---

volved. And that you have had the opportunity of adequate counsel which you have subjectively, that is, in your own mind refused to allow to represent you on whatever basis you may think to be proper.
Tr. 478–79.

**11.** At the evidentiary hearing, Whaley read a note from his files written February 15 that described the appearance before Judge Fryer: It says "Bill Auld threatened by defendant and fired, Auld and threatened judge and talking

crazy. Defendant said wanted to represent himself, further noticed 3–14–83 for trial and Court consented. And PD," meaning public defender, "to be present and instructed Bill Auld to likewise be present." R3–102.

**12.** Auld testified:
But Mr. Strozier was very carefully informed that the knowledge of how to examine and cross-examine witnesses and how to prepare a case and how—what kind of testimony and

Whaley testified that the judge had examined petitioner at the pre-trial conference until he was satisfied that he understood his waiver of counsel. Based primarily on testimony describing the pre-trial warnings of the trial court, we conclude that petitioner was informed of the dangers of proceeding pro se and knowingly and intelligently waived his right to counsel.

Even if there were pre-trial warnings and Auld and Whaley's testimony is credited, petitioner contends that he was not informed in sufficient detail to make a voluntary choice to waive counsel. In particular, petitioner claims he should have been told that if he took the stand at trial, prior convictions could be used during cross-examination for impeachment purposes. Petitioner contends that the prosecution's notice to the court of intent to use similar transactions at trial and prior convictions at sentencing and the trial court's statement just before Strozier took the stand that he would be cross-examined like any other witness did not sufficiently inform him of the danger of testifying in his own defense. The *Strozier I* opinion indicated that if Strozier was ignorant of the consequences of taking the stand, that would weigh against a finding of intelligent waiver. *Strozier I,* 871 F.2d at 999. Petitioner refers to *Goode v. Wainwright,* 704 F.2d 593 (11th Cir.), *rev'd on other grounds,* 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983), where a waiver was valid because the trial judge asked petitioner "a series of technical legal questions" pertaining to the charge, voir dire, opening and closing arguments, the order of proof in a criminal trial, and the method of presenting testimony. *Id.* at 599. The opinion stated, however, that although these questions did communicate the dangers of self-representation, technical knowledge did not determine whether the waiver was knowing and intel-

ligent. *Id.* at 599 n. 7. This comports with the subsequent *Fitzpatrick* case, which stated that waiver should focus on the defendant's overall understanding rather than any particular set of questions from the trial judge. *Fitzpatrick,* 800 F.2d at 1065. In no Eleventh Circuit case does it appear that before embarking on self-representation a petitioner is entitled to know how prior convictions could be used by the prosecution.[13] The trial judge cannot predict the specifics of the trial or prepare the defendant for self-representation, but can only sufficiently inform the defendant of the likely dangers to allow an informed choice. The trial judge could have told petitioner that the prior convictions in this case might be used for impeachment if he testified and that they would jeopardize his case. However prudent, such a question is not presently required in this circuit. In this case the record overall indicates that the combination of advice from lawyers and the trial judge before trial sufficiently informed petitioner of the disadvantages of self-representation so that his choice to proceed pro se was knowing and intelligent.

Although *Strozier I* characterized the finding of waiver from a review of the entire trial record rather than a transcribed hearing as "rare," the number of appeals involving waiver under *Faretta* conducted without a hearing still occurs with some frequency. To avoid ambiguity in the future in direct appeals and collateral challenges, the state or federal trial court should conduct a searching pre-trial inquiry to determine whether a waiver is knowing and intelligent. *See Strozier I,* 871 F.2d at 997 n. 4. Two circuits have used their supervisory powers to require trial courts to conduct such an inquiry. *See United States v. McDowell,* 814 F.2d 245, 249 (6th Cir.1987); *United States v. Bailey,* 675

---

how to handle evidence presented against him and all the other technical aspects of a defense, that he would need someone skilled in doing this to give him even the slightest chance at overcoming the very formidable evidence that the State had against him. R3–69.

**13.** Even those circuits that have required a more detailed inquiry to establish waiver have not

explicitly required that a criminal defendant be examined on the issue of prior convictions. *See, e.g., United States v. Allen,* 895 F.2d 1577, 1579 (10th Cir.1990); *United States v. McDowell,* 814 F.2d 245, 249, 251–52 (6th Cir.), *cert. denied,* 484 U.S. 980, 108 S.Ct. 478, 98 L.Ed.2d 492 (1987); *United States v. Welty,* 674 F.2d 185, 193 (3d Cir.1982).

F.2d 1292, 1300 (D.C.Cir.), *cert. denied,* 459 U.S. 853, 103 S.Ct. 119, 74 L.Ed.2d 104 (1982). *See also McDowell,* 814 F.2d at 251 (reprinting model questions to pose to a criminal defendant who wants to proceed pro se from the *Bench Book for United States District Judges* 1.02–2 to –5 (3d ed. 1986)). We strongly urge courts to conduct a similar inquiry to ensure voluntary and knowing waiver.

The denial of the petition for a writ of habeas corpus is AFFIRMED.