[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 07-15452
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 15, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-00448-CR-3-RV

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

VIRGIL TALLEY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(October 15, 2008)

Before ANDERSON, HULL, and MARCUS, Circuit Judges.

PER CURIAM:

Virgil Talley appeals his convictions for conspiracy to impede or injure an officer of the United States, in violation of 18 U.S.C. § 372, and two counts of endeavoring to influence, intimidate, or impede an officer of the United States, in violation of 18 U.S.C. § 1503. On appeal, Talley argues that the district court (1) erred in finding that he knowingly and intelligently waived his right to counsel, and (2) abused its discretion by requiring him to wear shackles and to be partially handcuffed at trial. After thorough review, we affirm.

I.

Ordinarily, a district court's conclusion that a defendant validly waived his Sixth Amendment right to counsel is a mixed question of law and fact that we review de novo. United States v. Kimball, 291 F.3d 726, 730 (11th Cir. 2002). However, because Talley raises this issue for the first time on appeal, our review is only for plain error. See Fed. R. Crim. P. 52(b). Under plain error review, a district court's decision is reversible only where (1) an error occurred, (2) the error was plain, and (3) the error affected substantial rights. See, e.g. United States v. Olano, 507 U.S. 725, 732 (1993). If these conditions are met, we may exercise our discretion to address the trial court's error, but only "if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Cotton, 535 U.S. 625, 631 (2002) (brackets and internal quotation marks omitted).

We review for an abuse of discretion the district court's decision to require a criminal defendant to wear shackles at trial, subjecting the ruling to "close judicial scrutiny." United States v. Durham, 287 F.3d 1297, 1304 (11th Cir. 2002) (quotation marks omitted). Even where a district court abuses its discretion, however, we will not vacate a conviction if the error was harmless. See United States v. Baker, 432 F.3d 1189, 1246 (11th Cir. 2005).

## II.

In 1998, Talley was convicted in the United States District Court for the Northern District of Florida on controlled substance and firearm charges, and was sentenced to 295 months' imprisonment. While incarcerated, Talley and a co-conspirator filed fraudulent creditors' liens, default notices, and a variety of other fraudulent commercial instruments in an attempt to damage the personal finances of the United States District Judge who presided over his trial, the Assistant United States Attorney who prosecuted him, and the United States Attorney for the Northern District of Florida.

In October 2006, Talley was charged with thirty-eight counts of mail fraud and one count of obstructing justice. He was subsequently arraigned in the Northern District of Florida before a magistrate judge who informed Talley of his right to

counsel, and asked whether Talley wished to have counsel appointed for him. Talley

replied that he wished to represent himself. The following colloquy ensued:

THE COURT: Mr. Talley, do you want to be represented by an attorney?

DEFENDANT TALLEY: No.

THE COURT: You want to represent yourself in this case?

DEFENDANT TALLEY: As a, like I said, as me being the third-party intervenor and by special visitation and attorney in fact for Virgil Talley, Trust, I have wanted to go ahead and speak before you to let you know that during this arraignment I will go ahead, because I don't plan to dispute what's going on, as far as the facts alleged in the indictment.

THE COURT: Well, Mr. Talley, I know that you have a lot of titles that you've assumed, and those titles may or may not be valid. I don't know. But today, today, it is the United States of America against Virgil Talley, and I want to know if Virgil Talley wants to be represented by a lawyer. Yes or no.

DEFENDANT TALLEY: No.

THE COURT: All right. Then I need to ask you some questions, and I want you to answer them straightforwardly. Don't hide behind or give me anything about your attorney in fact or any of that stuff. It's the United States against Virgil Talley.

As you know you have the right to an attorney, and I can appoint an attorney to represent you, if you don't have the money to hire one.

As you also know you have the constitutional right to represent yourself. And if you exercise that right to represent yourself, then you'll waive your right to be represented by an attorney.

Do you understand that?

DEFENDANT TALLEY: Yes, sir.

THE COURT: Have you ever studied the law?

DEFENDANT TALLEY: I've studied commercial law.

THE COURT: Have you ever studied criminal law?

DEFENDANT TALLEY: Criminal and civil law, yes, sir.

THE COURT: All right. Have you ever studied criminal law outside the prison system?

DEFENDANT TALLEY: As the attorney in fact for Virgil Talley, no.

THE COURT: Have you ever represented yourself in a criminal action?

DEFENDANT TALLEY: As a pro se litigant, yes, in several --

THE COURT: Civil cases?

DEFENDANT TALLEY: In civil cases, yes, sir.

THE COURT: But not in criminal cases?

DEFENDANT TALLEY: No.

THE COURT: All right. You realize that -- and you tell me you're not going to dispute the indictment, and that may be true and may not, I don't know -- but you realize that, if you're convicted, either based on a trial or on your own plea, that you can be sentenced to additional time in prison based on these charges; that is, in addition to the time you're serving currently. Do you understand that?

DEFENDANT TALLEY: Yes.

THE COURT: Ms. Adams, you're here representing the United States in this case.

MS. ADAMS: Yes, Your Honor, I am.

THE COURT: How many counts do we have against --

MS. ADAMS: There are --

THE COURT: -- this defendant?

MS. ADAMS: -- 39 counts -- 38 counts of mail fraud and one count of obstruction of justice.

THE COURT: And what are the maximum penalties for those counts?

MS. ADAMS: Your Honor, it will be, I believe, five years as to each mail fraud count, and I think five years on the obstruction of justice.

THE COURT: So it's five years times 39 counts?

MS. ADAMS: Yes.

THE COURT: Mr. Talley, I'll do the arithmetic for you, if you want me to; but, if you are convicted on these charges, you can be sentenced consecutively on each of those counts, which means that you can be sentenced, in addition to the prison term you're currently serving, to five years times 38.

Do you understand that? That's a big number; and, if you insist, I'll try to do the math and tell you what that number is. But do you understand that that's the sentence you're looking at?

DEFENDANT TALLEY: Yes, I understand.

. . . .

THE COURT: You understand what you're charged with. Now, in the federal system we have the federal rules of evidence, which will control in this case; and we have federal rules of criminal procedure, which control in this case. Are you at all familiar with the federal rules of evidence?

. . . .

DEFENDANT TALLEY: I would have to reference them, but I do know how to go to them. As far as the citations, I can find them in the statutes and reference them.

THE COURT: Okay. You understand that, as far as any evidentiary matters in this case, those rules apply?

DEFENDANT TALLEY: Yes.

THE COURT: Have you any familiarity with the federal rules of criminal procedure?

DEFENDANT TALLEY: Yes.

THE COURT: You understand that as regards to any procedure that is carried out in this case that those rules apply?

DEFENDANT TALLEY: Yes.

THE COURT: You are currently incarcerated, I believe, in a federal prison somewhere. But unless I'm wrong, until this case is tried, you'll be kept here in one of the local jails.

DEFENDANT TALLEY: Yeah.

THE COURT: You understand that the local jails don't have law libraries, and you will not have access to any research materials before your trial.

7

DEFENDANT TALLEY: Yes, I'm fully aware of that. They already told me that at Santa Rosa County Jail.

THE COURT: All right. I guess the bottom line here, Mr. Talley, is you understand that, if you represent yourself, it's you against the United States. You've got no lawyer, you've got no one standing beside me. Whatever name you may attach to yourself or whatever title you may attach to yourself, it's you against the United States. Do you understand that?

DEFENDANT TALLEY: Yes, I understand the defendant will be against the United States. As the plaintiff, the United States will be against him.

THE COURT: Well, we haven't gotten to the plaintiff part yet.
There's an old saying in the law, Mr. Talley, that a lawyer who represents himself has a fool for a client, because there have been occasions in cases when lawyers represented themselves. The corollary to that old saying is that a defendant who represents himself has a fool for a lawyer. I'm not saying you're a fool. I'm saying that it would be very unwise for you to represent yourself in this case. My opinion is that, in spite of your protestations about your legal titles, your legal entitlements, who you are or how you approach this thing, if you represent yourself, you are making a very grave error. That is my opinion. Do you understand that? Yes?

DEFENDANT TALLEY: Yes, that's your opinion.

THE COURT: Now, I want to encourage you in the strongest possible terms to agree to let me appoint counsel for you, since presumably you're in prison and don't have the money to hire one. Do you want me to do that or not?

DEFENDANT TALLEY: No.

THE COURT: Do you understand that by refusing my offer to appoint counsel for you you are waiving your right to an attorney in this case?

DEFENDANT TALLEY: Yes, that's fully understood.

THE COURT: And I take it, based on our conversation, that your waiver of an attorney in this case is entirely voluntary on your part and it has not been forced on you by anyone.

DEFENDANT TALLEY: No, it hasn't been forced.

THE COURT: Voluntary?

DEFENDANT TALLEY: It hasn't been forced. I completely understand what you're saying.

THE COURT: Okay. All right. Well, you have the right to represent yourself. That right will be afforded to you; and, from here on out, you're on your own.

In concluding the hearing, the magistrate judge added that Talley could change his mind about representing himself at any point before the start of his trial. He also appointed a public defender to serve as Talley's stand-by counsel. Finally, when Talley failed to provide a clear answer as to how he wished to plead, the magistrate judge entered a not-guilty plea on Talley's behalf.

Talley's case was later transferred to the Middle District of Florida, but was quickly returned to the Northern District, where it was reassigned to another district judge, and where Talley was charged in a superseding indictment.[1] During the

---

[1] In the superseding indictment, the mail fraud and obstruction of justice charges were dropped and replaced by the charges on which Talley was ultimately tried and convicted: conspiracy to impede or injure an officer of the United States, in violation of 18 U.S.C. § 372,

arraignment on the superseding indictment, the district judge revisited Talley's decision to represent himself:[2]

> THE COURT: Well, I know that previously you have elected to proceed without an attorney, and I just want to revisit that decision. You seem like an intelligent man. Why are you doing that?
>
> THE DEFENDANT: Why am I doing that?
>
> THE COURT: Yes.
>
> THE DEFENDANT: Because it's a private matter. This matter is a private matter.  It's private nonnegotiable matter between the parties . . . .
>
> THE COURT: Well, I'm not sure if I follow that.  My question is why do you feel you don't need an attorney? You don't have any legal training, do you?
>
> THE DEFENDANT: Well, the matter at hand, I have accepted this case for value on -- on -- on 11-9-06, and I have returned it for closure. I didn't intend to dispute the facts in the charging instrument.  However, that day [the] Magistrate Judge . . . elected to enter a -- a plea not of my own consent.  And I spoke with him about that that day. However, I wasn't able to continue to finish speaking. And I elect to do the same at this initial proceeding . . . .  I accepted the case for value and I also placed a special appearance bond for and on the record.

---

and endeavoring to influence, intimidate, or impede an officer of the United States, in violation of 18 U.S.C. § 1503.

[2] In this colloquy, as in his subsequent appearances before the district court, Talley's replies were often long, rambling, and obscure.  For the sake of brevity, rather than providing a verbatim account of each of Talley's statements, we have reproduced only those parts of the transcript necessary to capture the basic gist and tenor of his responses.

THE COURT: Well, let me just interrupt you. It's not a private matter. It's a criminal charge, and you are facing criminal penalties because of this, which may include a considerable amount of additional prison time for you. Do you understand that?

THE DEFENDANT: I under --

THE COURT: It's serious. It's a serious matter. It's not just a -- you know, a whim that you can play out here.

THE DEFENDANT: I understand all that. But the point -- the case -- the case in being is, it's a criminal matter and I have accepted -- and I have accepted the matter for value, and I am, pursuant to Rule 8 --

THE COURT: Well, you don't accept it for value. This is a charge that the government is gonna prosecute you for. And you have the right to have an attorney in this matter and --

THE DEFENDANT: Well, according --

THE COURT: -- I strongly urge you to have an attorney. One will be appointed to represent you.

THE DEFENDANT: According to the Sixth Amendment to the Constitution, I have the right to have effective assistance of counsel, if I so choose. In this matter I do not choose. I'm not gonna participate in this matter as far as allowing any jurisdiction, because it's a matter that's without the form and jurisdiction of this court . . . .
. . . .

THE COURT: But my question is, are you sure you want to proceed without the benefit of the assistance of an attorney or a lawyer to represent you?

THE DEFENDANT: I have a secured interest in the person named in the indictment.

11

THE COURT: That's -- that's a meaningless response, Mr. Talley.

THE DEFENDANT: I wouldn't --

THE COURT: Do you understand the consequences to you of not having an attorney?

THE DEFENDANT: No, I don't. I wish -- I don't wish to have -- have that. I waive it.

When the court later turned to the superseding indictment and asked whether Talley understood the charges, Talley replied that he had read the document and that he understood "the nature of the charges as it applies to the person that's being charged in the charging instrument as the superseding indictment." He waived his right to have the charges read to him, and when he once again refused to enter a plea, the district court entered a plea of not-guilty on his behalf. At the conclusion of the hearing, the district court also ordered that Talley undergo a competency evaluation.

Talley was subsequently examined by a forensic psychologist. The report determined that Talley understood the nature and consequences of the proceedings against him; it further concluded that Talley was mentally competent at the time of the alleged offenses, and that Talley was mentally competent to stand trial. Moreover, the psychologist opined that Talley's odd behavior was deliberate and calculated. Indeed, rather than betokening mental illness, the psychologist concluded that Talley's legal rambling was in fact part of a larger defense strategy being used

12

with increasing frequency by criminal defendants in federal court. As the report explains:

> [T]he tenets of this defense strategy are based on the following: an individual can copyright and/or claim his own name and/or person as property, that all crime is commercial crime, and that the Courts do not have legitimate jurisdiction . . . to name a few . . . . In conclusion, the defendant's defense strategy is not based on confused or delusional thinking, or any symptoms of an active phase of mental illness. Instead, these ideas appear to be increasing in popularity among criminal defendants. The defendant further asserted that his defense strategy is a recourse in obtaining relief from his current federal sentence.

The district court subsequently issued an order adopting and incorporating the psychologist's report and finding that Talley was "competent to proceed in the case." The order specifically made reference to the psychologist's opinion that Talley's "bizarre and incoherent arguments . . . are increasingly common among prisoners and 'demonstrate organized, deliberate, and calculated behaviors.'" The order further reminded Talley that he would be required to follow applicable evidentiary and procedural rules while representing himself at trial. Talley does not challenge the district court's ruling that he was mentally competent.

On June 27, 2007, the government filed a second superseding indictment. Because it contained no substantive changes from the previous charging document, the district court did not immediately re-arraign Talley. Shortly before the start of his trial, however, the district court conducted an abbreviated arraignment at the

13

government's request. The district court again asked whether Talley wished to represent himself and strongly admonished him against doing so. Talley refused to allow himself to be represented and indeed refused to participate in the proceedings at all.

THE COURT: All right. And, let's see. Mr. Talley, are you ready?

THE DEFENDANT: Uh -- I'm not here to participate, but if that constitutes being ready.

THE COURT: Well, you have to be present for the trial, so whether you participate is somewhat up to you. But I do need to tell you that my job is to ensure that you get a fair trial to the extent that I can possibly do so. And, you know, it's your life on the line. It's years of additional prison time that you are facing. So any -- any lack of cooperation by you in the trial may prove to be detrimental to your own case. I think you need to know that. Do you understand what I'm saying?

THE DEFENDANT: No, I don't understand.

THE COURT: Well, failure to cooperate in your trial may be perceived by the jury, which is the trier of fact, as indicating, first of all, that you are guilty as charged, but also may create a feeling of animosity from the jury toward you. So I'm not sure that failure to cooperate in the trial is going to be perceived by the jury as helpful to your case. Do you see what I'm saying now?

THE DEFENDANT: For and on the record, I am appearing separately under the circumstances as third-party intervenor . . . .

THE COURT: Mr. Keith, you have been appointed as stand-by . . . counsel, and I do request that you sit at the table and be close to Mr. Talley to be available for consultation at anytime [sic] that he wants you

14

to do it. Mr. Talley, are you gonna be representing yourself in this trial or are you gonna assist -- have the assistance of Mr. Keith?

THE DEFENDANT: I'm not presenting my person nor myself at this trial, because I will not participate. And again, I am not --

THE COURT: That's not my question. Listen to my question. The question --

THE DEFENDANT: No.

THE COURT: -- is are you gonna represent yourself or are you gonna have Mr. Keith assist you?

THE DEFENDANT: No.

THE COURT: You are not going to represent yourself?

THE DEFENDANT: Nor will he assist me.

THE COURT: You don't want -- you don't want any legal counsel at all?

THE DEFENDANT: No.

THE COURT: Are you waiving your right to any legal counsel?

THE DEFENDANT: I can't waive a right to trial?

THE COURT: I'm sorry?

THE DEFENDANT: I cannot waive a right to trial when the matter is nonexistent.

THE COURT: Well, I'm simply advising you that if you are not going to utilize Mr. Keith, and you are not gonna do anything, you are both de

15

facto and essentially waiving any right to counsel which is guaranteed to you under the Sixth Amendment of the Constitution.

THE DEFENDANT: I have -- for and on the record, I have the right to assistance of counsel pursuant to the Sixth Amendment to the Constitution, but I -- I choose not to partake in any justiciable controversy that's dealing with unproved being. And Mr. Keith shall not represent my person, because I have a secured interest in that property.

THE COURT: You don't have a secured interest -- there is no property issue in this trial. The issue really is your own liberty, whether you are gonna be convicted of these charges and sentenced to additional prison time. And I can -- I can assure you with a great deal of confidence that failure to participate in this trial is going to be detrimental to your own interest.

. . . .

THE COURT: Do you understand the charges against you, the same charges as in the previous superseding indictment?

THE DEFENDANT: No, I don't.

THE COURT: All right. Well, they have been previously explained to you and are exactly the same. And before I enter a plea of not guilty for you, how do you plead?

THE DEFENDANT: I object to you entering a plea on my behalf.

Finally, just before the start of the trial, the court made one last attempt to

caution Talley about proceeding pro se:

THE COURT: -- again, Mr. Talley -- Mr. Talley, everything you said is really a non sequitur. It has nothing to do with the criminal charges and the serious penalties that you are facing. And again, I --

16

THE DEFENDANT: Where is the complaining party?

THE COURT: -- need to make sure that you understand that it's in your own interest that --

THE DEFENDANT: A legal description can't charge --

THE COURT: Wait a minute. Let me finish, Mr. Talley. It's in your own interest to participate actively or have your stand-by attorney represent you because trials are very complex. They are very involved. And everything that you have said is indicative of the total misunderstanding of the nature of the proceedings and the way the legal system operates. We have already had you examined. There is no question about your competency to stand trial. You are operating under a gross misconception of -- of how the trial is going to operate. So, again, my advice to you is to call upon your attorney to represent you. If not, if you insist on representing yourself, my recommendation to you is that you actively participate.

Talley again refused to let counsel represent him.

It was also during this final hearing that Talley's stand-by counsel noted for the record that Talley was in shackles, and that one of Talley's hands had been handcuffed. Talley's stand-by counsel stated that the court had given no reason for ordering the restraints, and he expressed concern about their potential influence on the jury. The district court stated that, given the substantial sentence that Talley was serving, he should remain in shackles.

After these events, the trial began. Talley remained silent throughout the proceedings. He made no opening or closing statements, put on no evidence, and

17

refused to respond to questions from the court. The jury found Talley guilty on all counts, and he was sentenced to fifty-seven months' imprisonment, to be served consecutively to the 295-month sentence he was already serving for his 1998 conviction on controlled substance and firearm charges.

## III.

On appeal, Talley first contends that the district court erred in finding that he knowingly waived his right to trial counsel. Specifically, he claims that he was never adequately informed of the risks associated with representing himself. We disagree.

In Faretta v. California, 422 U.S. 806 (1975), the Supreme Court held that before a defendant waives his right to counsel, he "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." Id. at 835 (internal quotation marks omitted). Whether this requirement has been met "depends upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." United States v. Garey, No. 03-0083, --- F.3d ----, 2008 WL 3850284, at *9 (11th Cir. Aug. 20, 2008) (en banc) (internal quotation marks omitted). The "ultimate test for whether there has been a valid waiver of the right to counsel is not the trial court's express advice, but rather the defendant's understanding." United States v. Cash, 47 F.3d 1083, 1088 (11th Cir.

1995) (internal quotation marks omitted). We have identified several factors that are useful in determining whether a defendant has knowingly chosen to represent himself:

> 1) the defendant's age, health, and education; 2) the defendant's contact with lawyers prior to trial; 3) the defendant's knowledge of the nature of the charges and possible defenses and penalties; 4) the defendant's understanding of the rules of evidence, procedure and courtroom decorum; 5) the defendant's experience in criminal trials; 6) whether standby counsel was appointed and, if so, the extent to which standby counsel aided in the trial; 7) any mistreatment or coercion of the defendant; and 8) whether the defendant was attempting to manipulate the trial.

Kimball, 291 F.3d at 730-31.

Applying these factors to the present case, we conclude that Talley's decision to represent himself was indeed knowing. First, the record discloses no concern relating to Talley's age, health, or education. At the time in question, he was thirty-eight years old, had completed two years of college, and could read and write. Further, the record indicates that Talley had sufficient knowledge of the charges against him. The magistrate judge informed Talley of the offenses charged in the original indictment and told Talley that he faced a potential sentence of five years for each of the indictment's thirty-nine counts. Talley replied that he understood. Likewise, when Talley was arraigned on the superseding indictments, the district court informed him of the crimes he was charged with and the severity of the

19

penalties attached to them.[3]  Indeed, the district court told Talley that it was his "life on the line."

In addition, Talley possessed an adequate familiarity with the relevant procedural and evidentiary rules.  Specifically, Talley stated that he knew the Federal Rules of Evidence and the Federal Rules of Criminal Procedure would apply at his trial.  As we explained in Kimball, the purpose of the Faretta inquiry is "not to determine the extent of a defendant's legal knowledge or to determine how good of a trial advocate a defendant will be," but to ensure only that the defendant is aware that the rules exist and that he will be bound by them.  Kimball, 291 F.3d at 731.

Talley also had previously been a defendant in a federal criminal trial, and he had represented himself in civil cases.  Moreover, stand-by counsel was appointed to assist him.  Additionally, Talley concedes that his decision to represent himself was voluntary and he raises no challenge to the district court's finding that he was mentally competent.  Finally, the examining psychologist opined that Talley's

---

[3] It does not appear from the record that the district court discussed with Talley the specific sentences possible under the superseding indictments.  While informing defendants of the potential penalties they face is optimal, failure to do so does not make a waiver invalid.  See, e.g., Fitzpatrick v. Wainwright, 800 F.2d 1057, 1066 n.6 (11th Cir. 1986) (waiver was valid despite the fact that, while defendant understood the serious nature of the charges against him, the record did not show that he knew the possible penalties he might receive if convicted); see also United States v. Kimball, 291 F.3d 726, 732 (11th Cir. 2002) (waiver valid even though district court gave defendant an inaccurate estimate of probable sentence).

seemingly nonsensical use of legal jargon was a tactic designed to manipulate the proceedings. Such posturing, we have observed, indicates "a greater understanding of the proceedings and an understanding of the risks and complexities of a criminal trial." Fitzpatrick v. Wainwright, 800 F.2d 1057, 1067 (11th Cir. 1986).

Talley nevertheless complains that he was not adequately warned about the risks of self-representation because the district court's inquiries into his decision were less thorough than the magistrate judge's. This, Talley claims, runs afoul of our statement in Strozier v. Newsome, 926 F.2d 1100 (11th Cir. 1991), that "the closer [a defendant's] waiver hearing is to trial, the more rigorous, searching, and formal the questioning of the trial judge should be." Id. at 1105. But Talley's argument ignores the fact that, as noted above, the ultimate criterion for determining a waiver's validity is not the trial court's advice but the defendant's understanding. Cash, 47 F.3d at 1088. As we have recounted, our review of the record satisfies us that Talley adequately understood the risks of representing himself: the magistrate judge's initial colloquy ensured that Talley was adequately apprised of the dangers when he was first indicted; and the district court's subsequent inquiries and warnings, when taken in concert with the magistrate judge's initial colloquy, were sufficient to establish that Talley continued fully to understand the risks of self-representation after the filing of the superseding indictments.

21

Talley's argument also ignores the fact that his own uncooperativeness hampered the judges' attempts to discuss the risks of self-representation with him. As we recently observed in Garey, "an unwilling defendant can foil a district court's best efforts to engage in dialogue, thereby preventing the court from eliciting clear information regarding the defendant's understanding of the dangers of proceeding pro se." Garey, --- F.3d ----, 2008 WL 3850284, at *10. We further explained:

> [W]hen confronted with a defendant who has voluntarily waived counsel . . . and who refuses to provide clear answers to questions regarding his Sixth Amendment rights, it is enough for the court to inform the defendant unambiguously of the penalties he faces if convicted and to provide him with a general sense of the challenges he is likely to confront as a pro se litigant.

Id.

Like the defendant in Garey, Talley's uncooperativeness made it difficult for the court to explore with him as fully as possible the risks and dangers of his decision. Indeed, Talley's conduct appears to have been calculated to have just such an effect. Under the circumstances, the steps taken by the magistrate judge and the district judge were appropriate: they informed Talley of the offenses with which he had been charged; they explained the seriousness of the penalties he faced if convicted; they conveyed to him a sense of the difficulties he would encounter if he were to proceed pro se; and they assigned stand-by counsel to assist him.

22

In short, reviewing the record in this case, we conclude that the district court did not plainly err in finding that Talley knowingly waived his right to trial counsel.

IV.

Next, Talley claims that his conviction must be overturned because the district court required him to appear before the jury in shackles and handcuffs. While we agree that the district court erred on this point, we decline to overturn Talley's conviction because we conclude that the error ultimately was harmless.

We have held that physical restraints "should be used as rarely as possible," given their potential to affect the jury's view of the defendant and to erode the defendant's presumed innocence. Durham, 287 F.3d at 1304. We have also held, however, that there are circumstances under which shackles are appropriate to ensure a safe and orderly trial. Id. Before ordering that a defendant be shackled during a trial, the district court must make a case-specific and individualized assessment that takes account of: (1) the defendant's criminal history and the nature of the pending charges, with special attention to whether either involved violent acts; (2) whether the defendant has disrupted criminal proceedings in the past; and (3) whether the defendant has engaged in any threatening behavior. Baker, 432 F.3d at 1244. The district court must state on the record its reasons for requiring the defendant to wear restraints. Durham, 287 F.3d at 1304. In determining whether the district court

23

abused its discretion, we consider (1) whether requiring the defendant to wear shackles furthered an essential state interest and (2) whether the trial court considered less restrictive methods of restraint.  Id.

Upon review of the record and consideration of the parties' briefs, we conclude that the district court abused its discretion in requiring Talley to wear shackles and to remain partially handcuffed during his trial.  There is no indication from the record that the court made a case-specific and individualized decision that such measures were appropriate.  Talley was not charged with a violent crime; he had never exhibited threatening behavior in any of his appearances before the court; and there was no particularized finding that Talley represented an escape risk.  Nor, finally, did the district court consider less restrictive methods of addressing any risk Talley posed.  Under these circumstances, Talley's right to due process was infringed.  Deck v. Missouri, 544 U.S. 622, 629 (2005) (unjustified shackling is a violation of due process).

Having concluded that the district court erred in requiring Talley to be shackled, we must ask whether the error was harmless.  Violation of a constitutional right will be found harmless if the government can show beyond a reasonable doubt that the error complained of did not contribute to the resulting verdict.  See, e.g., United States v. Candelario, 240 F.3d 1300, 1307 (11th Cir. 2001).  Here, Talley failed to present

24

any defense whatsoever to the government's case. Indeed, although he refused to enter a plea, he repeatedly stated that he did not wish to contest the allegations in the indictment. It is simply implausible to think that the trial's outcome might have been different if Talley had not been shackled. See, e.g., Boswell v. State of Alabama, 537 F.2d 100, 104 (5th Cir. 1976) (defendant's appearance before venire in shackles and prison garb was harmless error beyond a reasonable doubt).[4] Furthermore, although Talley was given the option of wearing civilian clothes during the trial, he elected to wear his prison uniform. In this case, the wearing of restraints presented no greater risk of juror prejudice to Talley than the wearing of prison garb. Cf. United States ex rel. Stahl v. Henderson, 472 F.2d 556, 557 (5th Cir. 1973) (defendant suffered no prejudice by being tried in prison garb since jury was already aware that he was incarcerated and "[n]o prejudice can result from seeing that which is already known").[5]

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit that were rendered prior to October 1, 1981.

[5] At the conclusion of his opening brief, Talley half-heartedly asserts that requiring him to wear shackles constituted a structural error affecting his trial as a whole, and that the district court's decision therefore should not be subject to traditional harmless error analysis. The Supreme Court has repeatedly emphasized that structural errors are very rare. Neder v. United States, 527 U.S. 1, 8 (1999). Talley makes no effort to explain why his case belongs in this category, nor attempts to distinguish his case from the many others in which we have subjected claims of wrongful shackling to harmless error analysis. See, e.g., Baker, 432 F.3d at 1246 (even assuming district court abused its discretion in shackling defendants, error would be harmless beyond a reasonable doubt); Durham, 287 F.3d at 1308 (applying harmless error analysis to district court's requirement that defendant wear stun belt).

We reiterate that defendants may be shackled only when necessary, and only after the district court has made a case-specific and individualized assessment of the nature of the danger posed by the defendant.  In this case, however, we hold that while the district court failed to meet these requirements, its error was harmless beyond a reasonable doubt.  Accordingly, we affirm Talley's conviction.

**AFFIRMED.**